(704 P.2d 1004)

No. 57,252

STATE OF KANSAS, *Appellee*,  v. JEFFREY D. HUBER, *Appellant*.

Opinion filed August 15, 1985.

*Jerry L. Harrison,* of Noah & Harrison, P.A., of Beloit, for the appellant.

*Charley Laman,* special assistant prosecutor, of Laman Law Office, of Clyde, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., REES and PARKS, JJ.

PARKS, J.: Defendant, Jeffrey D. Huber, appeals from his jury conviction of two misdemeanors, possession of marijuana (K.S.A. 1984 Supp. 65-4127b[a][3]) and possession of drug paraphernalia (K.S.A. 1984 Supp. 65-4152).

Defendant contends that the trial court erred in refusing to dismiss the charges for failure of the State to bring him to trial within the statutory time limits.

A defendant's right to an expeditious trial is protected both by statute (K.S.A. 22-3402[2]) and the constitutional provisions requiring a speedy trial. U.S. Const., Sixth Amendment; Kansas Const. Bill of Rights § 10. The statutory provision establishes definite limits within which a defendant must be brought to trial while the constitutional provisions have been interpreted to require a balancing test of the pertinent circumstances in each case. *State v. Rosine,* 233 Kan. 663, 667, 664 P.2d 852 (1983).

Defendant contends that he was denied his statutory right to a speedy trial because he was not tried until 194 days after December 7, 1983, the date defendant was arrested on a warrant and made his first appearance before a magistrate. However, K.S.A. 22-3402(2) provides that a person charged with a crime and held on an appearance bond must be discharged if he is not brought to trial within 180 days "after arraignment on the charge." The date of arraignment begins the running of the 180-day limit regardless of whether a felony or misdemeanor is charged. *Rosine,* 233 Kan. at 669; *State v. Taylor,* 3 Kan. App. 2d 316, 320, 594 P.2d 262 (1979). Moreover, an arraignment is not necessarily equivalent to a first appearance before a magistrate but is defined as follows:

"The arraignment in a criminal proceeding is the formal act of calling the

defendant before a court having jurisdiction to impose sentence for the offense charged; informing the defendant of the offense charged by reading the complaint, information or indictment or stating to him the substance of the charge; and asking defendant whether he is guilty or not guilty or to otherwise plead as permissible by law." *Rosine*, 233 Kan. 663, Syl. ¶ 3.

In addition, K.S.A. 22-3205 provides that arraignment shall be conducted in open court and shall consist of reading the complaint, information or indictment to the defendant or stating to him the substance of the charge and calling upon him to plead thereto.

Defendant was originally charged with a felony offense in addition to the two misdemeanor charges but the felony was subsequently dropped and an amended complaint filed. Defendant was tried on June 18, 1984. The only in-court proceeding held more than 180 days before trial was the first appearance held on December 7, 1983. Thus, defendant must contend that this hearing retroactively served as his arraignment on the surviving misdemeanor charges. However, the complaint on which defendant was ultimately tried was not filed until April 17, 1984; therefore, the court could not have accurately read the charges against defendant until after that time. In addition, the journal entry of the first appearance conducted after the first complaint was filed does not indicate that defendant was given any opportunity to enter a plea. In fact, there is no indication in the record that defendant ever entered a plea.

Furthermore, it appears from the record that defendant was never arraigned at all. From the time the amended complaint was filed charging only the commission of the two misdemeanors until the day of trial, there is no indication in the record that defendant was advised of the charges in open court or called upon to enter a plea. This procedural lapse in no way taints defendant's conviction since a defendant effectively waives arraignment when he goes to trial without objection and submits the question of guilt to the jury. *State v. Jakeway*, 221 Kan. 142, 143, 558 P.2d 113 (1976); *State v. Cutshall*, 4 Kan. App. 2d 240, 241, 604 P.2d 288 (1979), *rev. denied* 227 Kan. 927 (1980). Defendant never contended that he was improperly tried without arraignment; to the contrary, he had to contend that the hearing on December 7, constituted arraignment in order to assert a denial of his statutory right to a speedy trial. In sum, since this December hearing did not conform to the procedures

necessary to be called an arraignment, defendant was not tried more than 180 days "after arraignment on the charge."

There are four relevant factors to consider in determining whether there has been a denial of the constitutional right to a speedy trial: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. *Rosine*, 233 Kan. at 667, citing *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972). *Rosine* compared instances in which delay has been found not to be prejudicial, stating as follows:

"In *State v. Calderon*, 233 Kan. 87, the court found a thirteen-month delay between the time defendant was charged and brought to trial did not violate his constitutional right to a speedy trial. In *State v. Ward*, 227 Kan. 663, the court affirmed a conviction where there had been a 243-day lapse between arrest and trial. A similar result was reached in *State v. Wilson*, 227 Kan. 619, where a three-year period existed between arrest and trial. *State v. Dolack*, 216 Kan. 622, 636, 533 P.2d 1282 (1975), found no abridgment of constitutional rights where more than three years passed. *State v. Hemminger*, 210 Kan. 587, reached a like result with over four years. In *Barker v. Wingo*, 407 U.S. 514, the U.S. Supreme Court found no violation of defendant's constitutional right to a speedy trial where more than five years passed between his arrest and trial. Recently, in *State v. Hunt*, 8 Kan. App. 2d 162, where exactly one year passed between arrest and trial, the Court of Appeals held such a delay was not per se unreasonable. 8 Kan. App. 2d at 168." 233 Kan. at 667-68.

With these precedents in mind, it is clear that the delay of 194 days between defendant's arrest and trial cannot be found to be presumptively prejudicial. Moreover, defendant has not suggested any way in which the delay actually prejudiced his case. Therefore, defendant's constitutional right to a speedy trial was in no way impaired in this case.

Prior to trial, defendant filed a motion to suppress the evidence seized pursuant to the search warrant on the grounds that the affidavit offered in support of the warrant's issuance was insufficient to establish probable cause. The court refused to consider the merits of this motion, holding that defendant lacked standing to contest the warrant's validity.

In two relatively recent U.S. Supreme Court cases, the rules regarding standing to attack a search on Fourth Amendment grounds in cases involving possessory crimes were completely

rewritten. *United States v. Salvucci*, 448 U.S. 83, 65 L.Ed.2d 619, 100 S.Ct. 2547 (1980); *Rakas v. Illinois*, 439 U.S. 128, 58 L.Ed.2d 387, 99 S.Ct. 421 (1978), *reh. denied* 439 U.S. 1122 (1979). Previously, the Court had adopted an "automatic" standing rule with two alternative parts. *Jones v. United States*, 362 U.S. 257, 263-67, 4 L.Ed.2d 697, 80 S.Ct. 725 (1960). First, any defendant who, in order to have standing, would be required to admit the same type of possessory interest as the prosecution would be required to prove in order to establish an essential element of the crime charged had the automatic right to challenge the legality of a search. In addition, anyone who was legitimately on the searched premises also had the right to raise a Fourth Amendment claim. In *Rakas*, the Court abandoned the latter basis for standing holding that only individuals who can claim that their personal Fourth Amendment right to be free from unreasonable searches has been infringed have standing. The Court held that the impact of *Jones* should be limited to meaning that a person may have sufficient interest in premises owned by another to raise a Fourth Amendment claim but that he must have had a reasonable expectation of privacy in those premises. *Rakas*, 439 U.S. at 142-43. In *Salvucci*, the Court took a further step in narrowing standing by overruling the remaining portion of *Jones* which had provided automatic standing to defendants charged with possessory crimes. The Court concluded that standing must depend not merely on whether the defendant had a possessory interest in the items seized but whether he had a legitimate expectation of privacy in the area searched. The Court did not discount entirely the importance of property ownership in establishing a protectable privacy interest but held that legal ownership was only one factor to be considered. *Salvucci*, 448 U.S. at 91-93. In sum, the rule adopted in *Rakas* and *Salvucci* focuses on the individual's right to privacy rather than his possible possessory interest in the property searched or seized as the determinative basis for standing to claim an infringement of Fourth Amendment rights.

Our Supreme Court has embraced the narrowing of standing to challenge a search effected by *Rakas* and *Salvucci*, holding as follows:

"An illegal search can only violate the rights of those who have a legitimate expectation of privacy in the invaded place. The basic test to determine whether

or not a person present on the premises at the time of the search has standing to challenge the validity of the search is not whether that person had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." *State v. Worrell*, 233 Kan. 968, Syl. ¶ 1, 666 P.2d 703 (1983).

This syllabus point states that standing depends on whether the defendant had an expectation of privacy in the area searched and not whether he had a possessory interest in the items seized. However, the circumstances of *Worrell* did not involve the search of any personal property within the premises. The Fourth Amendment protects the right to be free from unreasonable searches in "persons, houses, papers, and effects." Certainly, it would appear that a person may have an expectation of privacy in certain property he possesses even though he has no such interest in the place in which he possesses it. For example, in *State v. Callari*, 194 Conn. 18, 478 A.2d 592 (1984), *cert. denied* _____ U.S. _____ (1985), the defendant was a transient social guest in the home searched. He slept in a room of the house for a few nights but kept no clothes in the room or evidenced any intent to stay in the room again. The court held that he did not have an expectation of privacy in either the house or the room itself but held that he did have standing to contest the search of his locked suitcase which was found in the room. The court concluded that by virtue of his acknowledged ownership of the suitcase and the nature of the item itself, the defendant would have an expectation that its contents would remain private. Thus, the defendant's lack of standing regarding the place searched did not deprive him of the standing to challenge the search of an item in which he would have a privacy expectation. See also *Rakas*, 439 U.S. at 142, n. 11 (In discussing the casual visitors' lack of privacy expectation in the place visited the Court noted: "This is not to say that such visitors could not contest the lawfulness of the seizure of evidence or the search if their own property were seized during the search.").

When the search of the premises was carried out in this case, a number of items of drug paraphernalia were located in various parts of the house. Substances believed to be marijuana or other controlled drugs were also found on the premises. While defendant's motion to suppress challenged the admissibility of all of this evidence, only the marijuana and drug paraphernalia found either at defendant's feet or in the pocket of his sweatshirt jacket were actually admitted into evidence against him. There-

fore, the key issue in this case is whether defendant had an expectation of privacy in the pockets of his jacket as it lay beside him on the chair. Since none of the evidence in the actual premises search of the house was admitted against defendant, the existence of an expectation of privacy on defendant's part in the house itself is secondary, if even relevant at all.

Whether an individual may have a legitimate expectation of privacy in a certain item normally involves two inquiries. The first is whether the individual, by his conduct, has exhibited an actual or subjective expectation of privacy or whether he has sought to preserve the item as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 61 L.Ed.2d 220, 99 S.Ct. 2577 (1979). Thus, for example, items such as luggage, wallets and purses and, of course, an individual's person have all been found to be subjects of a legitimate expectation of privacy. See, *e.g., Robbins v. California*, 453 U.S. 420, 69 L.Ed.2d 744, 101 S.Ct. 2841 (1981); *United States v. Monclavo-Cruz*, 662 F.2d 1285, 1287 (9th Cir. 1981); *Terry v. Ohio*, 392 U.S. 1, 9, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968).

While there is certainly a greater expectation of privacy in a locked suitcase than in the pocket of a sweatshirt jacket, the fact that the jacket was lying on the chair within defendant's reach and control would seem to indicate that he expected to be able to limit access to its pockets. In addition, as an item of clothing, the jacket has some of the same qualities of personalness which society recognizes as investing everyone with an expectation of privacy in their own person. Since defendant was not wearing the jacket when it was searched, an expectation of privacy cannot be presumed, but both its proximity and nature militate in favor of such a finding. The search was conducted in the winter and defendant was only a guest in the house. Thus, the jacket was not merely a stray article of clothing lying around but was something defendant arrived wearing and expected to leave the apartment wearing. Under the circumstances, we conclude that defendant did have the necessary privacy expectation in the pockets of the jacket to have standing to question their search.

The search of the house in this case was authorized by the search warrant. While executing that warrant, one of the police

officers noticed a bag of white powder on top of the jacket. Upon further observation, he could see a plastic bag appearing to contain green vegetation visible in the pocket of the undisturbed jacket. Thus, the prosecution argued that search of the jacket was proper because the officer observed the contents of the pocket in plain view at a time when he was authorized by the search warrant to be on the premises. See *State v. Parker*, 236 Kan. 353, 358, 690 P.2d 1353 (1984). The defendant contended that the search was unlawful because the affidavit underlying the search warrant was insufficient to establish probable cause for its issuance.

Recently, in *United States v. Leon*, 468 U.S. _____, 82 L.Ed.2d 677, 104 S.Ct. 3405 (1984), the Supreme Court created a good faith exception to the exclusionary rule for evidence seized pursuant to a search warrant which was subsequently held to be invalid. If this exception can be applied on the assumption that the search warrant was defective, the court need not review the actual sufficiency of the warrant and underlying affidavit. If the evidence seized need not be excluded from admission, our inquiry into the lawfulness of the search is at an end.

No Kansas case has formally adopted the *Leon* holding and this Court is technically free to retain the stricter pre-*Leon* rules adopted by our state in interpreting Section 15 of the Bill of Rights of the Kansas Constitution. However, our Supreme Court has repeatedly stated that the scope of § 15 is identical to that of the Fourth Amendment to the U.S. Constitution (see, *e.g.*, *State v. Deskins*, 234 Kan. 529, Syl. ¶ 1, 673 P.2d 1174 [1983]), and there is no reason to believe that the Kansas Supreme Court would take a different position regarding the *Leon* rule. See *State v. Rose*, 8 Kan. App. 2d 659, 663, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983). Therefore, we conclude that the good faith exception to the exclusionary rule created in *Leon* should be applied, if appropriate, to this case.

In *Leon*, the Supreme Court held that the exclusionary rule should not bar admission of evidence seized in good faith on the authority of a search warrant issued without fraud or falsity in the affidavit or partiality by the magistrate. Here, the defendant has made allegations supported by an affidavit that some of the statements in the affidavit were false. Specifically, the affidavit stated that Laurie Roney's boyfriend "divulged to the informant"

that he and Laurie Roney were using cocaine, quaaludes and marijuana. Defendant filed an affidavit by Mike Decker stating that he was Laurie Roney's boyfriend but that he had never made such a statement. Since defendant did not claim falsity by the police officer affiant but simply disputed the truthfulness of an informant's statement, there is no taint on the appearance of good faith possessed by the police which would undercut the application of *Leon. Leon*, 82 L.Ed.2d at 689-99. See, *e.g., Franks v. Delaware*, 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978); *State v. Jacques*, 225 Kan. 38, 44, 587 P.2d 861 (1978).

Defendant has raised no other questions concerning the motivation of the police officers seeking the warrant or the issuing magistrate which would prohibit the application of the good faith exception to the exclusionary rule. Therefore, regardless of the sufficiency of the affidavit, the search authorized by the warrant may be viewed as producing admissible evidence. The officers were conducting their search of the house in good faith and observed the items seized from defendant's jacket in plain view. Therefore, the search of the jacket, as well as that of the house, would be proper.

Appellant's motion to assess costs is sustained and transcript costs of $102.00 are assessed against the State (Cloud County).

Affirmed.