(809 P.2d 1233)

No. 64,748

STATE OF KANSAS, *Appellee,* v. JORGE A. CRUZ and JUAN TOMAS DE LA CRUZ, *Appellants.*

Opinion filed April 19, 1991.

*Lucille Marino*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant Jorge A. Cruz.

*Geary N. Gorup*, of the Law Offices of Leslie F. Hulnick, P.A., of Wichita, for appellant Juan Tomas De La Cruz.

*Bruce L. Stewart* and *Thomas J. Robinson*, assistant district attorneys, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRAZIL, P.J., LARSON and GERNON, JJ.

LARSON, J.: Jorge A. Cruz and Juan Tomas De La Cruz appeal their convictions of possession of cocaine with intent to sell. K.S.A. 1988 Supp. 65-4127a.

On February 23, 1989, Bob Pierce notified the Wichita Police Department of a possible burglary in the vacant house next to his. He had observed a black male wearing dark clothing and a dark ball cap enter the house and leave five minutes later. Officer Wahl responded to the call.

Officer Wahl spoke briefly to Pierce, who told him he saw a man wearing a red ball cap enter the house. Officer Wahl went to the front door of the house, knocked, and tried to open the door. As he turned to leave, the door opened.

Jorge and Juan Tomas were standing in the doorway. One of them was wearing a red ball cap. Officer Wahl tried to communicate with and obtain identification from Jorge and Juan Tomas, who did not appear to understand English. Jorge and Juan Tomas stepped back into the house and Officer Wahl stepped onto the front landing of the entryway as he continued to attempt to obtain identification. After a conversation in Spanish between Jorge and Juan Tomas, which Officer Wahl did not understand, Juan Tomas began walking toward the rear of the house out of the officer's line of vision. Fearing that Juan Tomas would attempt to escape, the officer took Jorge by the coat and followed Juan Tomas to the back of the house.

Juan Tomas went to the basement but came back up in four or five seconds. Officer Wahl heard what he thought was a wooden object hitting the basement floor. The three returned to the living room where they waited for back-up officers to arrive.

When back-up Officers White and Runft arrived, Officer Wahl left to talk with neighbors. Learning nothing, Officer Wahl went back to the house and down into the basement to check out the noise he had heard earlier. He saw what appeared to be part of a gun sticking out between cushions on a sofa. He removed the cushions and discovered plastic bags and scales. He left the items as he found them.

Jorge and Juan Tomas were taken to the police station, and a search warrant was obtained for the house. Officer Cutliff executed the warrant and found in the basement a gun, scales, plastic

bags, 1.8 pounds of 87 to 98 percent pure cocaine in a bag under the stairs, and 3 letters. Upstairs, $710 in cash was found under the carpet in a bedroom and a key ring was found in the closet of the bedroom. Kenneth Holmes, the landlord, recognized three of the keys as the keys he gave to a lady named Maria Garcia, who had rented the place with the assistance of Holmes' tenant Penny Comacho.

A search of the residence failed to turn up paraphernalia for scooping or measuring the cocaine or any substance for "cutting" the cocaine. Attempts to match latent fingerprints found on a plastic shopping bag with those of either Jorge or Juan Tomas failed, as did an attempt to match palm prints to either of the defendants.

The house was one of many rental properties owned by Holmes. Through Comacho, a tenant who helped him locate other tenants for his properties, Holmes rented the house to Garcia on February 16, 1989. Holmes testified that, several days after he had rented the house to Garcia, the house appeared to be unoccupied.

At the time of the arrest, there was no furniture, food, or clothing in the house. There were some curtains or sheets nailed to the windows. Comacho testified that Jorge and Juan Tomas had been with her and Garcia earlier in the day and that Garcia, Jorge, and Juan Tomas had gone to the house to hang curtains.

Garcia has apparently left the Wichita area and did not testify at either the hearing on the motion to suppress or the trial.

Officer Cutliff and Detective Derby testified that in their opinions the house was being operated as a "safe house" where drugs are warehoused for distribution to sellers.

Jorge and Juan Tomas were tried jointly and convicted of possession of cocaine with intent to sell. Their motions to suppress and motions for directed verdict were denied. Neither defendant presented any evidence. Motions for new trial were denied and each defendant was sentenced to 3 to 10 years' imprisonment. Both appealed.

Separate counsel represented Jorge and Juan Tomas at trial and on appeal.

Juan Tomas raises five issues on appeal: (1) Did the trial court err in allowing the prosecution to proceed on its submitted bill

of particulars; (2) did the trial court err in admitting testimony regarding "safe houses"; (3) did the trial court err in failing to grant his motion for judgment of acquittal; (4) did the trial court err in denying his motion to suppress evidence; and (5) did the trial court err in instructing the jury regarding possession?

Jorge claims on appeal that (1) the evidence was insufficient to support the jury's finding of guilt when there was no evidence that he possessed the drugs and the trial court erred in failing to grant his motion for judgment of acquittal following the presentation of the State's case, and (2) the trial court erred in giving an erroneous instruction and in refusing to properly instruct the jury on the definition of possession.

Although we reach our ultimate decision by the determination of Jorge's first issue and Juan Tomas' third, we must first consider the propriety of denying the motion to suppress and admission of the evidence regarding "safe houses."

*Did the trial court err in denying the motion to suppress the evidence?*

Both defendants moved to suppress, contending all physical evidence seized was inadmissible as fruit of the poisonous tree, *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), because the original entry into the home was impermissible without a search warrant and probable cause for the subsequent search warrant was based on information obtained as a result of the original warrantless entry.

The evidence at the suppression hearing did not show any lawful reason for the defendants to be on the premises where they were arrested. Based on that evidence, the trial court reached the following decision:

"This Court finds that the defendants, Juan Tomas Dela Cruz, @Tomas Olivo and Jorge A. Cruz @George A. Cruz were trespassers at the residence at 3203 Wellington Place in Wichita, Sedgwick County, Kansas.

"As trespassers they have none of the rights of a person occupying premises as a home owner or a tenant. Therefore, the extra ordinary protection[s] afforded persons in lawful possession are not applicable in this case.

"The defendants' Motion to Suppress evidence is denied."

Defendants had attempted to subpoena Comacho to testify at the suppression hearing but claimed to have been unable to locate or serve her, although her whereabouts was known to the State,

which had subpoenaed her as a trial witness. Defendants asked for the hearing to remain open or be subject to reopening after Comacho's testimony was received. The trial court, facing the start of the trial, made the above ruling, which was clearly correct. Trespassers have not been granted Fourth Amendment rights because they do not have a reasonable expectation of privacy in the property. See *United States v. Ray*, 734 F.2d 108 (2d Cir. 1984); *G. R. v. State*, 638 P.2d 191, 197 (Alaska App. 1981) (Stolen car cases were relied upon by analogy in holding that a defendant who was at the time an escaped felon had no standing regarding the car he was driving when apprehended because he was, at the time, "a trespasser on society.").

At trial, Comacho testified as a State's witness that both defendants had been employed by Garcia, the tenant of the property, to install curtains on the windows of the involved premises. Comacho said Garcia purchased curtains at a secondhand store but did not have curtain rods. The hammer and nails found in the house substantiate this story.

Once Comacho testified, the defendants renewed their motions to suppress, and the trial court said its ruling would remain the same. The reasoning on which the trial court based its ruling was clearly erroneous, for the State had then established that both defendants were lawfully on the premises as employees. Nevertheless, "[t]he reasons given by the district court for its decision are immaterial so long as its ruling was correct for any reason." *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 245, 777 P.d 811 (1989); *D-1 Constructors, Ltd. v. U.S.D. No. 229*, 14 Kan. App. 2d 245, 246, 788 P.2d 289 (1990).

Neither Jorge nor Juan Tomas presented any evidence which connected them to the premises in any manner other than as employees of Garcia, so we must consider if such status gives them standing to raise a Fourth Amendment objection.

Our modern constitutional law of standing begins with *Jones v. United States*, 362 U.S. 257, 263-67, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960), which announced a two-part rule of "automatic" standing for (1) any defendant who admitted the same type of possessory interest the prosecution was required to prove in order to establish an essential element of the crime charged or (2) anyone who was legitimately on the searched premises.

*Jones* remained the law for less than 20 years and the theory of "automatic" standing was abandoned and rejected by later decisions of the United States Supreme Court, which were summarized by Justice Prager in *State v. Whitehead*, 229 Kan. 133, 136, 622 P.2d 665 (1981), in the following manner:

"In *Rakas v. Illinois*, 439 U.S. 128, 58 L.Ed.2d 387, 99 S.Ct. 421 (1978), *rehearing denied* 439 U.S. 1122 (1979), the court found the standing conferred in *Jones* because the defendant was 'legitimately on the premises' to be too broad. The court stated that the 'capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' p. 143. (Emphasis supplied).

"In *United States v. Salvucci*, 448 U.S. 83, 65 L.Ed.2d 619, 100 S.Ct. 2547 (1980), the court specifically rejected the 'automatic standing' rule of *Jones*. As noted above, the rule of *Jones* conferred 'automatic standing' when the element of possession was also an element of the criminal charge. The court in *Salvucci* approved *Rakas*, stating that an illegal search can only violate the rights of those who have a 'legitimate expectation of privacy in the invaded place.' The basic test to determine whether or not a person present on the premises at the time of a search has standing to challenge the validity of the search is not whether that person 'had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched.' 448 U.S. at 93.

"This court has also recognized that the Fourth Amendment right to protection from unreasonable searches is based upon the individual's right of privacy (*State v. Chiles*, 226 Kan. 140, 146, 595 P.2d 1130 [1979]), and that one does not have standing to challenge a search where there is no expectation of freedom from intrusion (*State v. Gordon*, 221 Kan. 253, 258, 559 P.2d 312 [1977])." 229 Kan. at 136.

The court went on in *Whitehead* to hold that "where, at the time an apartment was searched by police, the defendant was dressed in his pajamas, clothing of defendant was found in the closet, and defendant stated he lived there on an irregular basis, the defendant had a legitimate expectation of privacy in the area searched which gave him standing to challenge the legality of the search under the Fourth Amendment to the United States Constitution." 229 Kan. 133, Syl. ¶ 3.

The Kansas Supreme Court, in *State v. Worrell*, 233 Kan. 968, 666 P.2d 703 (1983), vacated an order suppressing seized evidence in holding the defendant did not have an expectation of privacy in the upper floors of a family corporation-owned warehouse of

which he was the manager. Worrell had an office on the first floor of the warehouse, which was being utilized in the wholesale building materials business; the third and fourth floors, where spent cartridges and a slug were seized, were inhabited by pigeons and were empty except for some stacked pallets and discontinued displays. Worrell had no personal property stored on the floors where the evidence was found nor were any business records located there.

The evidence below shows no connection between Jorge and Juan Tomas and Garcia except that of employees and employer. Comacho testified that Jorge and Juan Tomas were to be paid for their services, which they appeared to be in the process of performing when Officer Wahl appeared. The factual situation here is much closer to that in *Worrell* than in *Whitehead.*

Juan Tomas argues that the decision in *State v. Epperson,* 237 Kan. 707, 703 P.2d 761 (1985), which allowed standing to a defendant who did not admit possession or control of premises, controls here. We believe *Epperson* to be factually distinguishable. Epperson was the passenger in Auerbach's automobile. Auerbach's rights were violated and the evidence obtained from the search of his car was properly suppressed. Justice Miller reminded us in the opinion that "[t]he proponent of a motion to suppress evidence has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search and seizure," 237 Kan. at 717, and then ruled that Epperson had failed to carry that burden.

Notwithstanding his lack of standing, the evidence seized from the search of the car was suppressed as to Epperson but for reasons which do not benefit Jorge and Juan Tomas. The initial stops of both Auerbach and Epperson while outside the car were illegal. This was the basis for the subsequent suppression, that followed the cases that hold a passenger has standing to challenge a search where the motor vehicle and its passengers were improperly stopped. 237 Kan. at 717-18.

The officer herein thought he was investigating a burglary or, at the least, a trespassing. We are not prepared to hold that the initial investigation in this case is an unlawful stop. The officer was making a reasonable investigation based on a bona fide complaint which justifies the initial confrontation. The inability of the

parties to communicate verbally does not require that suspected trespassers or burglars should be allowed to escape. The decisions in cases involving automobiles are not always totally reconcilable with those involving residences but, as to the standing issue, *Epperson* provides more comfort to the State's position than support for Juan Tomas' argument.

Cases from other states have recognized that an employee has no standing to challenge the legality of a search of the employer's premises. *Tobias v. State*, 479 N.E.2d 508 (Ind. 1985) (pharmacist employed in his father's drug store had no expectation of privacy in public restroom of store); and *People v. Gordon*, 128 Misc. 2d 1030, 492 N.Y.S.2d 654 (1985) (employee of Ben Jack Auto Collision did not have standing to challenge seizure of drugs from his employer's office). But see *State v. Anonymous*, 40 Conn. Supp. 20, 480 A.2d 600 (1984), (babysitter for child of occupants of apartment had a socially acceptable expectancy of privacy sufficient to enable her to exclude others from the apartment and thus had standing to attack the legality of a search made with a warrant but in violation of a "knock and announce" rule).

One other Kansas case deserves to be mentioned. In *State v. Huber*, 10 Kan. App. 2d 560, 566, 704 P.2d 1004 (1985), the search was authorized by a search warrant but an expectation of privacy, which society was prepared to recognize as reasonable, was found to exist as to the pockets of the defendant's jacket which was lying within his reach. The seized items were held to be in plain view and, thus, the search of the jacket was deemed proper. This is again factually different from our case. None of Juan Tomas' possessions were found in the house as were those of the defendant in *Whitehead.*

The burden was on Juan Tomas to show he exhibited an expectation of privacy in the Holmes-owned, Garcia-rented residence. Under *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), a defendant may testify at the suppression hearing to establish his standing to challenge his search without jeopardizing his defense at trial. This Juan Tomas did not do, nor was he compelled to do, but from the evidence available to the court it is clear that Juan Tomas, as Garcia's employee, did not have a reasonable expectancy of privacy and his Fourth Amendments rights were not violated because the

Fourth Amendment was not applicable. See Moylan, *Fourth Amendment Inapplicable or Satisfied*, 40 S. Ill. U.L.J. 75 (1977).

Juan Tomas also argues the State could not proceed in an inconsistent manner and contend at the trial that constructive possession with intent to sell existed but deny that Juan Tomas had any legitimate expectation of privacy (standing) in opposing the motion to suppress. This contention is without merit.

With the rule of automatic standing for possessory crimes abolished and the right of a defendant to testify at his suppression hearing without jeopardizing his defense at trial, "a prosecutor may simultaneously maintain that a defendant criminally possessed the seized goods, but was not subject to a Fourth Amendment deprivation, without legal contradiction." *United States v. Salvucci*, 448 U.S. 83, 90, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980).

Under the current standing rules it is not fatally inconsistent for the State to contend defendant possessed an illegal substance in a place where the defendant did not have a legitimate expectation of privacy.

The factual determination of whether there is a reasonable expectation of privacy is different and distinct from the determination of whether an item is within the possession of the defendant. All the State proved herein is that Juan Tomas was lawfully in the premises installing curtains, which does not give him any expectation of privacy over the seized items. Whether the same proof provides a justifiable basis for the conviction of possession of cocaine with intent to sell is a separate issue which we will consider.

*Did the trial court err in admitting testimony regarding "safe houses"?*

Both defendants filed motions in limine, which were denied, and objected at trial to testimony advising the jury that the house of arrest was a "safe house" used to sell drugs without detection.

The trial court ruled that the only foundation required for the testimony on safe houses was for the officers to have reason to know about them based on their experience and training and that such testimony be relevant and material. On appeal, Juan Tomas

primarily objects to the opinion evidence because it did not have sufficient foundation.

Whether a witness is qualified as an expert witness and whether the witness' testimony and opinion are admissible are determinations left to the sound discretion of the trial court. The decision of the trial court will not be disturbed on appeal absent an abuse of that discretion. *State v. Bright,* 229 Kan. 185, 190, 623 P.2d 917 (1981); *State v. Waufle,* 9 Kan. App. 2d 68, Syl. ¶ 3, 673 P.2d 109 (1983).

Before a witness may testify on a matter there must be evidence that the witness has personal knowledge thereof or experience, training, or education if such is required. K.S.A. 60-419. An expert witness' opinion is limited to an opinion based on facts or data perceived by or personally known or made known to the witness at the hearing and within the scope of the special knowledge, skill, experience, or training possessed by the witness. K.S.A. 60-456(b).

Juan Tomas contends Officer Cutliff's and Detective Derby's training and experience were nonspecific and unreliable and their testimonies were contradictory, making their opinions mere speculation. Juan Tomas also objects to the weight and credibility to be afforded to the officers' opinions.

Cutliff had been with the Wichita Police Department for over eight years with four years of work in narcotics, including two years with the Drug Enforcement Administration (DEA). He had learned about safe houses during a two-week DEA course, but he did not recall the time spent on the topic. He also testified he had visited safe houses and spoken with violators and informants as a basis for his knowledge.

Derby testified he had been a police officer for eight years with six months in the narcotics division. He had also attended a two-week DEA course and visited safe houses as a part of his investigative work.

Both officers were extensively questioned on voir dire and cross-examined. The differences between a typical safe house and the facts in this case with the perceived contradiction were examined and pointed out to the jury. We are not prepared to rule that the presentation of this evidence constituted an abuse of the trial judge's discretion.

Juan Tomas persuasively compares the testimony regarding the general characteristics of a safe house in this case with the inadmissible testimony offered describing the characteristics of a typical offender in other cases. See *Florida v. Royer,* 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983); *United States v. Sokolow,* 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989). He contends the opinion testimony that this was a safe house is the only proof the State offered that Juan Tomas had knowledge, dominion, and control over the drugs found in the basement.

In *State v. Clements,* 244 Kan. 411, 770 P.2d 447 (1989), the Kansas Supreme Court considered whether evidence of the profile of a typical offender was admissible. Justice Lockett concluded that it was reversible error to allow evidence from which the only inference that could be drawn was that, if the defendant fit the profile of a typical offender, the defendant was guilty. Such an inference is impermissible as it has no bearing on the question of whether a particular defendant is guilty of the crime charged. 244 Kan. at 420-21.

The decision in *Clements* is factually distinguishable. Evidence that the house was a safe house does not prove the guilt of the defendants. This provides no direct substantial evidence that Juan Tomas intended to sell the drugs located therein.

It was not inappropriate for the opinions of the officers to be allowed on a topic which is outside of a normal person's knowledge. It was not an abuse of discretion to allow the testimony that the place where the defendants were found was being operated as a "safe house." The testimony may have gone to prove that someone was selling cocaine from the premises, but it presents no inference that the sellers were the defendants.

*Was the evidence insufficient to support a finding of guilt and did the trial court err in refusing to grant motions of acquittal?*

This issue is argued by both defendants. Jorge argues there was no evidence he possessed the drugs while Juan Tomas claims a judgment of acquittal was required because the State inferred possession with intent to sell from mere presence on the premises.

" 'A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable in-

ferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion.' " *State v. Colbert*, 221 Kan. 203, 209-10, 557 P.2d 1235 (1976). See K.S.A. 22-3419.

A motion for judgment of acquittal is substantially the same as a motion attacking the sufficiency of the evidence. *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984).

"A conviction of even the gravest offense may be sustained by circumstantial evidence. [Citation omitted.] When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990).

The essential elements of the charge of violating the Uniform Controlled Substances Act in addition to time and place are that:

1. The defendant possessed cocaine, *and*

2. the defendant did so with the intent to sell it.

See PIK Crim. 2d 67.14.

The due process clause of the Fourteenth Amendment requires proof beyond a reasonable doubt of each element of the crime charged. *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). Because all that the State proved was that Jorge and Juan Tomas had been employed by Garcia to install curtains in the house she had rented from Holmes, it is critical to determine if the evidence establishes beyond a reasonable doubt that "possession" was shown and that the cocaine was possessed with intent that it be sold. This brings into direct focus the holdings of our cases where possession and control are critical issues.

"Possession of a controlled substance requires having control over the substance with knowledge of and the intent to have such control. Knowledge of the presence of the controlled substance with the intent to exercise control is essential.

"Control as used in K.S.A. 65-4127a means to exercise a restraining or directing influence over the controlled substance." *State v. Flinchpaugh*, 232 Kan. 831, Syl. ¶¶ 1, 2.

See *State v. Washington*, 244 Kan. 652, 654.

" ' "Possession" of [a controlled substance] is having control over the [controlled substance] with knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence. [Citation omitted.] Possession may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. [Citation omitted.]' " *State v. Rose*, 8 Kan. App. 2d 659, 664, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983)(quoting *State v. Bullocks*, 2 Kan. App. 2d at 49-50.

"When a defendant is in nonexclusive possession of premises on which drugs are found, the better view is that it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs. [Citation omitted.] Such parallels the rule in Kansas as to a defendant charged with possession of drugs in an automobile of which he was not the sole occupant. [*State v. Faulkner*, 220 Kan. 153, 551 P.2d 1247 (1976).] Incriminating factors noted in *Faulkner* are a defendant's previous participation in the sale of drugs, his use of narcotics, his proximity to the area where the drugs are found, and the fact that the drugs are found in plain view. Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of defendant's possession to the drugs." *Bullocks*, 2 Kan. App. 2d at 50.

None of the incriminating factors referred to above are present in this case. There was no evidence connecting either defendant with the cocaine, baggies, scales, or money found in the house. There was no evidence they ever made or attempted sales of drugs or that informants or undercover agents had purchased drugs from them. No connection was made between the defendants and the money found nor with the letters seized.

Juan Tomas would not have had sufficient time to hide the drugs during his four to five seconds in the basement and the only connection of Jorge to the drugs is by his presence in a supposed safe house.

In other Kansas cases dealing with constructive possession, more than mere presence or access to the drugs has been required to sustain a conviction. In *State v. Rose*, 8 Kan. App. 2d at 664, defendant was found to possess marijuana although he did not live in the house where it was found or possess a key to the house. The record was replete with testimony that Rose was a principal in a marijuana growing and processing operation, that he was on the premises almost daily, and that large sums of

money were kept in a safe at the house which could not be opened without Rose's presence and participation.

In *State v. Bullocks*, the defendant was found to possess marijuana discovered in a trailer located in the yard of the house in which he lived. The evidence was that the trailer was the defendant's and that drug paraphernalia found in the house was in plain view, which tended to show not only knowledge and intent but probable use as well. 2 Kan. App. 2d at 49-50.

In *State v. Walker*, 217 Kan. 186, 190, 535 P.2d 924 (1975), the defendant was found to constructively possess heroin, which was found in the bedroom of a house that only he occupied.

In *State v. Flinchpaugh*, the Kansas Supreme Court affirmed the lower court's dismissal of the charge of possession of cocaine. The charge had been based on the presence of cocaine in the defendant's blood sample. In discussing the State's claim that the presence of the drug in the defendant's bloodstream was sufficient circumstantial evidence of possession, the court stated:

"[K]nowledge is an essential ingredient of the crime of illegal possession of a controlled substance. The defendant must know of the presence of the controlled substance. *State v. Faulkner*, 220 Kan. at 156. The intent to possess, to appropriate the drug to oneself, constitutes the requisite mental attitude for conviction of possession. *State v. Metz*, 107 Kan. at 596." 232 Kan. at 835.

The evidence, tested as we must on appeal, does not give rise to or justify the inference which allows a finding of guilt beyond a reasonable doubt.

While the factors previously referred to are sufficient to require reversal of the convictions, it is also reversible error to allow the jury to speculate on unjustifiable inferences. Guilt may never be based on inference alone. Presumptions and inferences may be drawn from facts established, but presumption may not rest upon presumption or inference on inference. *State v. Doyle*, 201 Kan. 469, Syl. ¶ 8, 441 P.2d 846 (1968).

Our Kansas Supreme Court in *State v. Williams*, 229 Kan. 290, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981), reversed a jury conviction of aggravated burglary and felony murder and recognized it is not unique to reverse convictions where the record does not contain sufficient evidence to sustain the verdict of the jury. Chief Justice Schroeder in the opinion denying

a rehearing set forth the obligation of appellate courts dealing with circumstantial evidence, presumptions, and inferences in the following manner:

"Convictions based upon circumstantial evidence, as in the instant case, can present a special challenge to the appellate court. Juries are permitted to draw *justifiable* inferences from proven circumstances and established facts; but the appellate court must determine whether findings based upon inferences are *justifiable* by applying additional rules of law.

"In *State v. Gobin*, 216 Kan. 278, 531 P.2d 16 (1975), this court reversed a felony conviction of attempting to steal swine. The proof in that case was entirely circumstantial, and we recited applicable appellate rules including the following: 'Presumption and inferences may be drawn only from facts established and presumption may not rest upon presumption or inference on inference.' 216 Kan. at 280; see *State v. Doyle*, 201 Kan. at 488; *State v. Ragland*, 170 Kan. 346, 351, 226 P.2d 251 (1951).

"Black's Law Dictionary 917 (4th ed. rev. 1968) defines an inference as '[a] process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted.' See *Duncan v. Railway Co.*, 82 Kan. 230, 233, 108 Pac. 101 (1910) (where a discussion of inference and presumption is made). The presumption referred to is the permissive type, not the mandatory or conclusive presumption. See Stumbo, *Presumptions—A View at Chaos*, 3 Washburn L. J. 182, 190-91 (1964).

"The rule which forbids the basing of an inference on an inference has received treatment and analysis in Annot., 5 A.L.R.3d 100. In Kansas, the rule has been cited most frequently in civil cases, but it is recognized as 'doubly applicable in criminal cases.' *State v. Doyle*, 201 Kan. at 488, and cases cited therein.

"The rule is restated in 1 Wharton's Criminal Evidence § 91, pp. 150-51 (13th ed. 1972):

'Another way, perhaps, of verbalizing the rule prohibiting an inference on an inference and a presumption on a presumption is the rule, as stated by some courts, that where reliance is placed upon circumstantial evidence, the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.'

"The rule against basing an inference on an inference has been discussed in more detail in Kansas civil cases. This court has said that what is meant by the rule forbidding the basing of one inference upon another inference is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. *Virginia Surety Co. v. Schlegel*, 200 Kan. 64, 434 P.2d 722 (1967). Permissible presumptions or inferences, as understood in the law of evidence, must have substantial probative force as distinguished from surmise. *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 689, 549 P.2d 1026 (1976). While reasonable inferences may be drawn from the facts and conditions shown they cannot

be drawn from facts or conditions merely imagined or assumed. *Duncan v. Railway Co.*, 86 Kan. 112, 119 Pac. 356 (1911)." 229 Kan. at 648-50.

In order for the convictions to be upheld based on the State's evidence, the jury would be required to infer beyond a reasonable doubt from the defendants' lawful presence in the house that:

(1) The defendants' knew there were drugs and money in the house;

(2) since this was a safe house, whoever was in the house knowingly exercised control over all the drugs which were found therein;

(3) although Garcia had rented the house, she could not be located, leaving Juan Tomas and Jorge in control of the house;

(4) Juan Tomas, within four to five seconds (Officer Wahl's testimony), hid the cocaine when in the basement; and

(5) all of the above was done with the intent to sell cocaine.

The State established the defendants were hanging curtains for the new tenant of a house police officers opined was a safe house. There was no showing that Comacho's testimony was anything but totally reliable. What the State asks is for an inference of unlawful behavior to be contradictorily drawn from direct evidence of lawful behavior. This is not legally permissible.

There was no showing of knowledge of the drugs. There was no showing of dominion or control over the drugs. In order to justify both convictions, it is necessary to infer findings and inferences which the limited facts presented do not justify. To sustain the convictions we must condone inferences upon inferences upon inferences. This we will not do.

There was no evidence of the defendants' fingerprints on any of the drug paraphernalia. The drugs were not in plain view or located near the defendants. No possessions of either defendant were located near the drugs nor were any incriminating items found on their persons. The defendants made no incriminating statements. The bottom line of our holding is that findings of guilt are not *justifiable* based on the evidence presented. There was insufficient evidence to support the convictions. The motions for judgment of acquittal should have been granted.

Other issues raised by the appellants' need not be addressed.

The convictions of Jorge A. Cruz and Juan Tomas De La Cruz are reversed. We remand with directions that the sentences herein be vacated and that both defendants be discharged from custody forthwith.