(122 P.3d 392)

No. 92,657

STATE OF KANSAS, *Appellee*, v. ERMA JEAN MONTGOMERY, *Appellant*.

Opinion filed October 21, 2005.

*William K. Rork*, of Topeka, for appellant.

*Amy M. Memmer*, assistant district attorney, *Robert D. Hecht*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before ELLIOTT, P.J., MALONE and MCANANY, JJ.

MCANANY, J.: Erma Jean Montgomery appeals her convictions of driving under the influence of alcohol, failure to maintain a single lane, transporting an open container, and leaving the scene of an accident. We affirm her transporting an open container conviction and reverse the remaining convictions.

The facts that led to the charges against Montgomery are not in dispute. At 2:25 p.m. on December 15, 2002, Shawnee County Deputy Sheriff Kyle Lang was dispatched to investigate a single-vehicle accident. When he arrived he found an unoccupied van sitting in the roadway. The van had hit a road sign and the side of a bridge. He found Montgomery on the ground in the woods approximately 100 yards from the van. Montgomery was able to talk to Lang and told him she had been driving the van. Lang could smell the odor of alcohol on her breath. Fire department personnel arrived, and Montgomery told them she had been in an accident, was walking home, and was "too drunk to feel anything." When asked how much she had consumed, Montgomery responded, "Too much." She said she had quit drinking about noon and had not had anything to drink after the accident.

Containers of an alcoholic beverage were found in Montgomery's van. She was given a breath test and was then transported to the hospital where she submitted to a blood test. Her blood-alcohol concentration was .21.

Montgomery conceded at trial that while operating her van she failed to maintain a single lane, that her vehicle contained an open container of alcoholic beverage, that she did not immediately report the accident but left the scene, that she had been given all appropriate notices before testing, and that the testing equipment was duly certified. Further, she did not challenge the test results.

*Speedy Trial*

Montgomery claims she was denied the speedy-trial guaranteed by K.S.A. 22-3402(2) with respect to the charges of DUI and failure to maintain a single lane. She does not challenge her convictions for transporting an open container and leaving the scene of an accident on speedy-trial grounds. Here is the procedural history upon which her claim is based.

On May 5, 2003, Montgomery was charged with misdemeanor DUI and failing to maintain a single lane. She was served with process on May 14, 2003. Her first appearance was scheduled for July 9, 2003.

On July 3, 2003, Montgomery's attorney filed a notice stating Montgomery waived arraignment, understood the penalties if convicted, pled not guilty, and requested a trial setting. The case was set for trial on October 15, 2003. Montgomery claims this July 3 notice from her attorney is the equivalent of her being formally arraigned, and that pursuant to K.S.A. 22-3402(2) the 180-day speedy-trial clock began to run on this date.

On October 14, 2003, the State moved for a continuance due to the unavailability of an officer. The motion was sustained and the trial was rescheduled to January 6, 2004.

On November 7, 2003, an amended complaint was filed which added charges of transporting an open container and leaving the scene of accident. Montgomery was never arraigned on these new charges.

On December 30, 2003, 180 days had passed since July 3, 2003, when Montgomery claims the speedy-trial clock started to run.

On January 2, 2004, Montgomery filed a tardy request for a jury trial. Consequently, the trial was continued from January 6 to March 22, 2004.

On March 17, 2004, Montgomery requested a continuance of the March 22 trial because she believed that a decision in similar pending cases would establish that her right to a speedy trial had been violated. Montgomery's case was continued to April 14, 2004, and then rescheduled for May 26, 2004.

On May 26, 2004, Montgomery moved to dismiss the charges because she had been denied a speedy trial. Her motion was de-

nied. The case was then tried to the court on stipulated facts, and Montgomery was found guilty on all four charges. She now appeals.

Whether Montgomery was denied a speedy trial is a question of law over which we have unlimited review. See *State v. White*, 275 Kan. 580, 598, 67 P.3d 138 (2003). The resolution of this case turns on the answers to two questions: (1) Did the filing of Montgomery's "Waiver of Arraignment and Request for Court Trial Setting" on July 3, 2003, start the running of the 180-day speedy-trial clock? (2) Did the State's requested continuance of October 14, 2003, temporarily suspend the running of the clock? If the answer to question (1) is "yes," and the answer to question (2) is "no," then the speedy-trial clock ran out on December 30, 2003, and we need not consider the procedural history thereafter.

The State's obligation to provide the defendant with a speedy trial in both felony and misdemeanor cases commences on the date of arraignment. The applicable provision of the speedy-trial statute in effect at the time, K.S.A. 22-3402(2), provides:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)." K.S.A. 22-3402(2).

Arraignment is defined in K.S.A. 22-2202(3) as "the formal act of calling the defendant before a court having jurisdiction to impose sentence for the offense charged, informing the defendant of the offense with which the defendant is charged, and asking the defendant whether the defendant is guilty or not guilty." K.S.A. 22-3205(a) requires that

"[a]rraignment shall be conducted in open court and shall consist of reading the complaint, information or indictment to the defendant or stating to the defendant the substance of the charge and calling upon the defendant to plead thereto. The defendant shall be given a copy of the indictment or information before the defendant is called upon to plead."

We find no reported case that discusses waiver of an arraignment in a misdemeanor case under facts similar to those presented here, and the cases cited by the State do not control.

*State v. Taylor*, 3 Kan. App. 2d 316, 594 P.2d 262 (1979), cited by the State, determined that the speedy-trial clock did not start to run at Taylor's first appearance on felony aggravated assault charges because Taylor did not waive a preliminary hearing and no preliminary hearing had been held.

In *State v. Rosine*, 233 Kan. 663, 664 P.2d 852 (1983), cited by the State, the Supreme Court heard consolidated appeals by Rosine and Scott. Each case involved a charge of misdemeanor possession of marijuana. In each case the defendant's first appearance did not qualify as an arraignment to start the running of the 180-day clock because a complaint had not yet been filed. "The existence of a complaint, information or indictment filed against a defendant is a fundamental prerequisite to an arraignment." *Rosine*, 233 Kan. at 669.

The State also cites *State v. Huber*, 10 Kan. App. 2d 560, 704 P.2d 1004 (1985). In response to Huber's claim that his first appearance started the running of the speedy-trial clock, the court noted: "In fact, there is no indication in the record that defendant ever entered a plea." 10 Kan. App. 2d at 562.

Finally, in *State v. Smith*, 247 Kan. 455, 799 P.2d 497 (1990), Smith's attorney called the clerk's office before charges had been filed and requested that the case be set for trial. Again, no arraignment can take place when no complaint had been filed against Smith charging him with a crime.

In the case now before us, Montgomery was not charged with a felony that required a preliminary hearing (or waiver of the preliminary hearing) as in *Taylor;* charges had already been filed against Montgomery, unlike in *Rosine* and *Smith*; and, unlike in *Huber*, Montgomery did enter a plea to the charges against her.

The concept of waiver clearly applies to the requirement of an arraignment. It is well-settled law in this state that a defendant who has never been formally arraigned waives the right to an arraignment by going to trial without objection. See *State v. Jakeway*, 221 Kan. 142, Syl. ¶ 2, 558 P.2d 113 (1976). Logic compels us to conclude that when a defendant purposefully waives arraignment and the court approves that waiver by accepting the defendant's not guilty plea and schedules the case for trial, the waiver is an effective

substitute for the arraignment and there is no need for further arraignment proceedings to begin the running of the speedy-trial clock.

Here, charges of DUI and failure to maintain a single lane were pending against Montgomery. She retained counsel. Her counsel filed a "Waiver of Arraignment and Request for Court Trial Setting" in which Montgomery waived formal arraignment, acknowledged that she understood the maximum penalties upon conviction, entered pleas of not guilty, and requested a trial setting. Thereafter, neither the State nor the court scheduled any further arraignment of Montgomery, but rather the court set the case for trial as requested. The 180-day speedy-trial clock began to run on July 3, 2003.

Next, we must determine if the October 14, 2003, continuance interrupted the running of the speedy-trial clock. The State relies on K.S.A. 22-3402(3)(c), which provides:

"The time for trial may be extended beyond the limitations of subsections (1) and (2) for any of the following reasons:

. . . .

(c) There is material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days."

The only reference in the record to this continuance is the following entry in the appearance docket:

"10/14/03 CONTINUANCE. State by DARIAN DERNOVISH, defendant appears by counsel WILLIAM RORK. Reporter None. Request by the State. Opposing counsel does not object. Court Trial reset from October 15, 2003 to January 6, 2004 AT 9:00A.M. in division CR. OFFICER UNAVAILABLE THAT WEEK. DEF REQUEST NE SETTING OF 01/06/04 AT 9:00, 10:30, OR 3:00. NEP."

We are unable to identify even in the most general way the nature of the evidence or testimony that the unavailable officer would provide or its materiality, or the efforts made by the State to procure the officer's attendance at trial. Without these facts, there is nothing to demonstrate that the State's requested continuance

stopped the running of the speedy-trial clock pursuant to this statute.

The district court erred in finding that the prosecution of Montgomery for DUI and failure to maintain a single lane was not barred by the speedy-trial statute.

*Sufficiency of the Evidence*

We examine the record on Montgomery's challenge to the sufficiency of the evidence to determine if there is substantial evidence to support her being found guilty beyond a reasonable doubt on the remaining two charges: transporting an open container and leaving the scene of an accident. In doing so we examine the evidence in the light most favorable to the State. *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

*Transporting an open container*

K.S.A. 8-1599(b) prohibited Montgomery from transporting the opened containers of alcoholic beverage found in her van following the accident. Montgomery contends there was no evidence that she was driving while the bottles were open in the van. She contends the evidence could equally support a finding that she drank from the previously unopened containers after the accident. In doing so she ignores the undisputed fact that she told the officer at the scene that she stopped drinking at about noon before the accident and had nothing to drink after the accident. There was ample evidence to support this conviction.

*Leaving the scene of an accident*

K.S.A. 8-1603 requires a driver involved in an accident that causes property damage to remain at the scene until he or she has fulfilled the requirements of K.S.A. 8-1604. K.S.A. 8-1604(a) requires a driver involved in an accident to provide various information about the driver, the vehicle, and available auto liability insurance "to any person injured in such accident or to the driver or occupant of or person attending any vehicle or other property damaged in such accident." This information must also be given to any police officer who is at the scene of the accident or investigating the accident. The State argues that Montgomery's leaving the scene

constitutes a violation. The accident involved Montgomery, a sign, and a bridge. No other person was present or involved. The State does not explain how long Montgomery would have to stay at the scene in the hopes that a police officer might happen by. Further, the State ignores K.S.A. 8-1604(b).

In the event none of the persons specified in K.S.A. 8-1604(a) is present, K.S.A. 8-1604(b) requires the driver to "forthwith report such accident to the nearest office of a duly authorized police authority and submit thereto the information specified in subsection (a) of this section." The State argues that a report by telephone to the police department does not satisfy the statute. We fail to see this limitation in the statute. All of the information required by the statute could be communicated to the police over the telephone. Granted, the statute permits the officer to request that the driver "exhibit such person's license or permit [and] the name of the insurer and policy number," but this does not exclude the driver from going to the police station for this purpose if requested by the officer *after* reporting the accident by telephone.

The parties agree that Montgomery was involved in a single-vehicle accident and attempted to walk home after the accident. She was found in the woods about 100 yards from the accident scene. Viewing the evidence in the light most favorable to the State does not require us to imagine evidence that might have been presented but was not. The statute does not require Montgomery to personally appear at the police station to report the accident. Reporting the accident by phone will suffice. We cannot reasonably infer from the facts presented that the State has proven that Montgomery did not intend to phone the police department and report the accident when she got home. The evidence does not support Montgomery's conviction for leaving the scene of an accident.

Convictions for DUI, failing to maintain a single lane, and leaving the scene of an accident are reversed; conviction for transporting an open container is affirmed.