No. 81,218

STATE OF KANSAS, *Appellee*, v. PAUL J. KIMBERLIN, *Appellant*.

(984 P.2d 141)

Opinion filed July 9, 1999.

*Kiehl Rathbun*, of Wichita, argued the cause and was on the brief for appellant.

*Janette Lowry Satterfield*, county attorney, argued the cause, and *Jeffrey A. Bullins*, assistant county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: Paul J. Kimberlin appeals his bench trial convictions of possession of marijuana (K.S.A. 1998 Supp. 65-4162) and possession of drug paraphernalia (K.S.A. 1998 Supp. 65-4152), both class A, nonperson drug misdemeanors. The sole issue before us is defendant's claim that the district court erred in denying his motion to suppress evidence seized from defendant's residence

during the execution of a search warrant. Specifically, defendant claims that the warrant was supported by evidence obtained from his trash in violation of the Fourth Amendment of the United States Constitution.

## FACTS

On April 29, 1997, the Butler County Drug Task Force (task force) received a tip that marijuana was being used at 1020 South Topeka in El Dorado. The task force verified this was defendant's address. On three separate occasions, the task force picked up trash bags from this address.

Sergeant Dean Deines, field operations supervisor for the task force and affiant on the search warrant, testified that he had been a member of the task force for just over five years. He indicated that the task force picked up trash regularly without a warrant and searched it for incriminating evidence. During his tenure with the task force, Deines indicated that he had picked up trash several thousand times. There were two to five other officers working with the task force during this same time. Officers would retrieve a bag of trash set at the curb for pick up by city sanitation and replace it with a similar bag in order to avoid detection by the occupants of the dwelling. Task force officers searched as many as 30 to 40 trash bags in an evening, generally averaging 10 to 12 bags a day. The trash would be collected from residences when a tip was received. Information provoking the warrantless search could come in the form of "[t]ips, letters, anonymous letters, [or a] Crime Stopper call." The bags were not picked up without some sort of precipitating tip being received.

Sgt. Deines testified that the trash he picked up from 1020 South Topeka was located 5 to 8 feet from the street on the other side of "a little ditch area" or "right at the top of the ditch area" which was 35 to 40 feet in front of the house. The total distance from the house to the street was estimated to be approximately 50 to 55 feet. The entire area, including the ditch, was mowed by the resident. There is no sidewalk on that side of the street. The trash was sitting in the location customarily used for trash pick-up. Deines had to walk into the ditch to retrieve the trash. He indicated that he could

stand in the ditch and pick the trash bags up. The trash was in opaque plastic bags provided by the city for trash.

The parties stipulated that there was a city easement extending 17 to 20 feet from the edge of the road back toward the house. The parties further stipulated that the trash was sitting within this easement area when it was retrieved by Deines.

Items retrieved from the trash bags established they belonged to defendant and contained unspecified "contraband and paraphernalia" supporting the issuance of the search warrant. No challenge is made on the basis the material retrieved from the trash bags was insufficient to support the warrant. Rather, defendant contends the trash bags were unlawfully taken and examined by the task force. On June 24, 1997, the search warrant was issued and executed. The following items were seized: A corn cob pipe with marijuana residue, a seed, a stem, and a baggie with marijuana seeds and leaves in one automobile; rolling papers, a pipe with marijuana residue, and a box containing 23 grams of marijuana seeds in the house; several items containing marijuana and residue in a storage room; and a marijuana plant growing outside the back door. The charges and convictions herein were based on this evidence. Defendant appeals from said convictions.

## ISSUE

Did the district court err in denying defendant's motion to suppress evidence seized in a search of defendant's home pursuant to a search warrant issued on the basis of items taken from a warrantless search of defendant's trash set out for collection by city sanitation crews?

## STANDARD OF REVIEW

If the findings of the trial court on a motion to suppress evidence are based on substantial evidence, the appellate court will not substitute its view of the evidence for that of the trial court. When reviewing a trial court's suppression of evidence, the appellate court normally gives great deference to the factual findings of the trial court. However, the ultimate determination of the suppression of evidence is a legal question requiring independent appellate

determination. *State v. Salcido-Corral*, 262 Kan. 392, 406, 940 P.2d 11 (1997).

When the facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress becomes a question of law. An appellate court's scope of review on questions of law is unlimited. *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

The relevant facts of this case are not really in dispute. Both parties agree that the trash was seized without a search warrant, that the trash was located in an area separated from the street by a drainage ditch, and that the trash was put in this location for city sanitation crews to pick up and discard. We shall, accordingly, treat the issue as a matter of law with an unlimited scope of review.

## DISCUSSION

Both parties rely heavily on *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988), in support of their respective positions.

In *Greenwood*, police had received information from several sources that Greenwood might be engaged in narcotics trafficking. Specifically, a criminal suspect told police that a truck filled with illegal drugs was en route to Greenwood's address, and a neighbor complained to police of heavy vehicular traffic late at night in front of Greenwood's single-family home, indicating that the vehicles only stayed at Greenwood's house for a few minutes. Police began surveillance of Greenwood's home and saw several vehicles make brief stops at the house late at night and followed a truck from Greenwood's house to another residence previously under investigation for narcotics trafficking. Police then asked the neighborhood's regular trash collector to pick up the plastic garbage bags Greenwood had left on the curb in front of his house and turn the bags over to police without mixing their contents with the trash from other houses. The trash collector complied. The trash was searched, evidence of narcotics use was found, and a warrant to search Greenwood's house was obtained based on the items found in the trash. 486 U.S. at 37-38.

The Supreme Court framed the issue as follows:

"The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable. [Citations omitted.]" 486 U.S. at 39.

Based on these facts, the Supreme Court concluded that the respondents exposed their trash to the public sufficiently to defeat their claim to Fourth Amendment protection. The Court reasoned:

"It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. [Citation omitted.] Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it' [citation omitted], respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

"Furthermore, as we have held, the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. Hence, '[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' [Citation omitted.]" 486 U.S. at 40-41.

The Supreme Court believed its conclusions concerning society's expectations of what is or is not reasonable were supported by the unanimous rejection of similar claims by the federal Courts of Appeals and by the "vast majority" of the state appellate courts. 486 U.S. at 41-42.

Defendant argues, that his trash, unlike that in *Greenwood*, was inside the "curtilage" and hence not subject to police scrutiny. The curtilage argument must fail. The *Greenwood* opinion used the term one time, in the opening sentence, and the curtilage concept was not part of the Court's rationale in deciding the issue. As previously noted, the *Greenwood* holding was based upon Greenwood's lack of a reasonable expectation of privacy in his discarded trash. Absent such a reasonable expectation of privacy, there is no violation of the Fourth Amendment. Clearly, under *Greenwood*, the search of defendant's trash herein was not constitutionally impermissible as claimed.

Defendant then argues that prior Kansas case law discussing curtilage in other contexts should require that we distinguish *Greenwood* and reach a different result based upon § 15 of the Kansas Constitution Bill of Rights. We disagree.

As we held in *State v. Bishop*, 240 Kan. 647, Syl. ¶ 8, 732 P.2d 765 (1987):

"The Fourth Amendment of the United States Constitution and Section 15 of the Bill of Rights of the Kansas Constitution are identical for all practical purposes. If conduct is prohibited by the one, it is prohibited by the other."

A more recent case directly on point is *U.S. v. Long*, 176 F.3d 1304 (10th Cir. 1999). Long appealed the district court's denial of his motion to suppress evidence obtained through a warrantless search of trash bags taken from his property. Long had parked a trailer with a camper shell in a grassy area between the attached garage of his house and the alley. The trailer was located 7 feet from the garage and 3 feet from the edge of the alley. No fence or barrier separated the trailer from the alley. A county garbage collector testified that he had an agreement with Long to pick up the trash Long placed on top of the trailer. The collector indicated that sometimes there were trash bags near the garage, but he did not pick up any trash bags that were not on the trailer.

Topeka police officers received an anonymous tip about drug activity at Long's house. They were unable to find a confidential informant to make a buy from the residence, so officers commenced surveillance of the property. During their surveillance, officers saw the trash bags on the trailer on a Thursday and noted that the bags were gone the next day. They surmised that Long placed his garbage on the trailer for pick-up by sanitation crews. The following week, officers driving through the alley stopped next to the trailer, left their vehicle, stepped onto Long's property and removed three dark-colored garbage bags from atop the trailer. A search warrant was obtained based on evidence found in the trash bags. Upon executing the search warrant, officers found methamphetamine, cash, and several firearms, and Long was charged based on this evidence.

Defendant argued in a motion to suppress that officers obtained the trash bags from the curtilage of his home in violation of the Fourth Amendment. The district court held that the trailer was parked outside the curtilage of the home, but regardless of where it was parked, inside or outside the curtilage, Long lacked a reasonable expectation of privacy in the trash bags.

The 10th Circuit affirmed, examining the curtilage argument, as well as the expectation of privacy. 176 F.3d at 1308. First, the court held that the trailer was located outside the curtilage of the home. It was closer to the alley than the garage, being positioned as close to the alley as it could have been without being in the alley. Long did not demonstrate that this area of his backyard was used for an intimate activity associated with the sanctity of the home; rather, it was used for depositing garbage. As for the expectation of privacy, the court indicated that whether officers violated the Fourth Amendment does not depend solely on curtilage. In garbage cases, Fourth Amendment reasonableness turns on public accessibility to the trash (citing *Greenwood*, 486 U.S. 35). Society does not recognize a reasonable expectation of privacy in trash left for collection in an area accessible to the public. Long's placement of the trash bags so close to the alley made the garbage readily accessible and visible from a public thoroughfare. The location Long selected for trash pick-up, by arrangement with the trash collector, was not secluded or difficult to reach, and was near the alley with no fence or other barrier separating the trash from the alley. Long had purposefully placed the trash bags on the trailer, near the alley, for collection. The court held that once Long put his trash on the trailer adjacent to a public thoroughfare for collection, he defeated any reasonable expectation of privacy in the garbage (citing *Greenwood*, 486 U.S. at 40). The officers did not violate the Fourth Amendment when they removed the trash bags from the trailer. 176 F.3d at 1309.

Here, defendant placed his trash by the street for collection. The trash was 5 to 8 feet from the street and 35 to 40 feet from the house. A drainage ditch separated the trash from the street. There was no fence or barrier separating the trash from the street, other than the drainage ditch. Trash was placed in this location regularly

for collection by sanitation crews. As in *Long*, there was no indication that this was a secluded place or a place used for intimate activities associated with the sanctity of the home, thus, it does not have the basic attributes of curtilage. Whether the trash was inside or outside the curtilage is not determinative in garbage cases. Once defendant placed his trash out for collection, adjacent to a public thoroughfare, he defeated any reasonable expectation of privacy in the garbage. *Long* supports the state's position in this case, as does *Greenwood*.

## CONCLUSION

We have no hesitancy in concluding that the district court did not err in denying defendant's motion to suppress evidence seized during the execution of the search. The prior searches of defendant's trash, which led to the issuance of the search warrant, were not in violation of the Fourth Amendment or § 15 of the Kansas Constitution Bill of Rights. When defendant placed his trash bags by the ditch adjacent to a public street for collection by the city trash collector, he had no reasonable expectation of privacy in the discarded items, in accordance with the rationale of *Greenwood* and *Long* previously discussed.

Affirmed.