(20 P.3d 74)

No. 84,066

STATE OF KANSAS, *Appellee,* v. RICK E. FORTUNE, *Appellant.*

Opinion filed February 9, 2001.

*Douglas L. Adams, Jr.,* of Wichita, for appellant.

*Lesley A. McFadden,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before MARQUARDT, P.J., GREEN, J., and ROGG, S.J.

GREEN, J.: Rick E. Fortune appeals his convictions of possession of marijuana with intent to sell, failure to have a drug tax stamp affixed to marijuana, possession of amphetamine, failure to have a drug tax stamp affixed to amphetamine, and possession of psilocybin. On appeal, Fortune argues the trial court erred in denying his motion to suppress evidence seized from his residence during

the execution of a search warrant. Specifically, Fortune claims that the warrant was supported by information obtained from unreliable informants and by evidence obtained from his trash in violation of the Fourth Amendment to the United States Constitution. Fortune further contends that the trial court erred by allowing hearsay evidence regarding his previous sales of marijuana. We affirm.

In early 1998, the Wichita Police Department received information from confidential informants that Richard Fortune was trafficking marijuana from his residence. In the weeks that followed, Officer Kevin Goebel conducted surveillance on Fortune's trailer house and noticed a trash container next to the east end of the trailer, approximately 8 feet from the street. Each time Goebel observed the trash cart it was in the same position regardless of whether it contained garbage.

The container belonged to BFI, a garbage collection company. Goebel contacted BFI and learned trash collection at Fortune's trailer park was scheduled for Tuesdays. Goebel also learned that the BFI trash hauler would retrieve carts located next to the trailers if the distance was not too great and if the hauler did not have to enter the yard area.

In the early morning hours of Tuesday, April 14, 1998, Goebel observed Fortune's overflowing trash container, with garbage spilling over the top despite the closed lid. Goebel and another detective searched Fortune's garbage and discovered clear plastic bags containing a green, botanical substance that resembled marijuana. The substance found inside the plastic bags tested positive for marijuana.

Based on the information from the informants and on the evidence discovered in Fortune's trash, officers secured a search warrant for Fortune's residence. In the trailer, officers found two triple beam scales, several bricks of marijuana, "mushrooms" or psilocybin, and marijuana seeds. In addition, an officer disconnected the plumbing underneath the trailer and discovered two baggies containing amphetamine in the sewer pipes. The officers also found a recipe for methamphetamine, cash, and miscellaneous drug paraphernalia.

Fortune filed pretrial motions requesting suppression of all seized evidence and disclosure of the confidential informants' identities. Fortune contended that the trash container was not abandoned but was located within the curtilage of his home and, as such, the search violated his Fourth Amendment rights. The trial court denied Fortune's motions after finding that the search of the trash container did not violate Fortune's rights as it was in the location customarily used for trash collection. The trial court further determined that the informants were mere tipsters and their identity was not essential to assure Fortune received a fair trial, as the real probable cause to obtain the warrant was derived from the search of Fortune's trash container.

Fortune was convicted of possession of marijuana with intent to sell, failure to have a drug tax stamp affixed to marijuana, possession of amphetamine, failure to have a drug tax stamp affixed to amphetamine, and possession of psilocybin. He filed a motion for a new trial and a motion for judgment of acquittal, both of which were denied.

Fortune's first argument on appeal is that the trial court erred in denying his motion to suppress evidence seized from his residence because the search warrant was supported by information obtained from unreliable informants and by evidence obtained from his trash in violation of the Fourth Amendment to the United States Constitution.

If the findings of the trial court on a motion to suppress evidence are based on substantial evidence, the appellate court will not substitute its view of the evidence for that of the trial court. When reviewing a trial court's suppression of evidence, the appellate court normally gives great deference to the factual findings of the trial court. When the facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress becomes a question of law. An appellate court's scope of review on questions of law is unlimited. *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

The relevant facts of this case are not really in dispute. Both parties agree that the police were alerted of possible marijuana trafficking at Fortune's residence by confidential informants, that

Fortune's trash was seized without a search warrant, that the trash was located in an area adjacent to Fortune's residence and approximately 8 feet from the street, and that the trash was put in this location for a private sanitation company to pick up and discard. Accordingly, we shall treat the issue as a matter of law with an unlimited scope of review. See *State v. Kimberlin*, 267 Kan. 659, 662, 984 P.2d 141 (1999).

Fortune first claims that the information provided by the informants lacked indicia of credibility and reliability. However, it is no longer necessary for the State to prove the reliability or credibility of an informant to establish probable cause for the issuance of a search warrant. In the words of our Supreme Court:

> "We now recognize the 'totality of the circumstances' approach adopted in [*Illinois v.*] *Gates*, [462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 (1983),] whereby the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. [Citations omitted.]" *State v. Roudybush*, 235 Kan. 834, 846-47, 686 P.2d 100 (1984).

In the absence of any evidence establishing the reliability or credibility of the informant, corroboration by an independent police investigation will help establish probable cause. *State v. Hemme*, 15 Kan. App. 2d 198, 202, 806 P.2d 472, *rev. denied* 248 Kan. 998, *cert. denied* 502 U.S. 865 (1991).

Here, the police corroborated the information received from the informants by searching Fortune's trash and discovering evidence of drug trafficking. Fortune, however, contends that the evidence recovered from his trash cannot support probable cause because the police searched his trash container in violation of his Fourth Amendment rights.

To support his argument, Fortune attempts to distinguish his case from *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988). In *Greenwood*, police received information from several sources that Greenwood was selling drugs from his home. As part of their investigation, the officers asked the neighborhood trash collector to pick up and keep separate the garbage bags that were placed for collection on the curb in front of Green-

wood's house. On each occasion, the police searched the garbage bags and discovered items indicative of drug use and used the fruits of the searches to obtain warrants to search Greenwood's house. The searches of the house revealed quantities of illegal drugs, and Greenwood was arrested on felony narcotics charges. The charges were dismissed on the ground that the warrantless garbage searches violated the Fourth Amendment and the California Constitution.

The United States Supreme Court held that the warrantless search and seizure of the opaque plastic garbage bags left for collection outside Greenwood's home did not violate the Fourth Amendment. The Court stated such a search would only violate the Fourth Amendment if the persons discarding the garbage manifested a subjective expectation of privacy in their garbage that society accepted as objectively reasonable. It noted that Greenwood may have had a subjective expectation of privacy in the contents of the garbage bags but concluded he had sufficiently exposed the garbage to the public, rendering his subjective expectation of privacy unreasonable. 486 U.S. at 39-41.

Under *Greenwood*, the location of a person's garbage standing alone does not establish whether the search of the garbage was reasonable; rather, the analysis must include an examination of whether the person manifested a subjective expectation of privacy in the trash container and whether that expectation of privacy in the garbage is objectively reasonable. This analysis comports with Kansas cases construing the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights. See *State v. Timley*, 25 Kan. App. 2d 779, 781, 975 P.2d 264 (1998), *rev. denied* 266 Kan. 1115 (1999) (citing *Greenwood* for the proposition that location is only one factor in determining whether an individual has a reasonable expectation of privacy). See also *State v. Tinsley*, 16 Kan. App. 2d 287, 290, 823 P.2d 205 (1991) (stating existence of a property right is only one element in determining whether expectations of privacy are legitimate); *State v. Waldschmidt*, 12 Kan. App. 2d 284, 291-92, 740 P.2d 617, *rev. denied* 242 Kan. 905 (1987) (noting curtilage is entitled to a high degree of Fourth Amendment protection but is not free from all warrantless searches).

A more recent case addressing the warrantless search of garbage is *U.S. v. Long*, 176 F.3d 1304 (10th Cir.), *cert. denied* 528 U.S. 921 (1999). Long appealed the district court's denial of his motion to suppress evidence obtained through a warrantless search of trash bags taken from his property. Long parked a trailer with a camper shell in a grassy area between the attached garage of his house and the alley. The trailer was located 7 feet from the garage and 3 feet from the edge of the alley. No fence or barrier separated the trailer from the alley. A county garbage collector testified that he had an agreement with Long to pick up the trash Long placed on top of the trailer. The collector indicated that sometimes there were trash bags near the garage, but he did not pick up any trash bags that were not on the trailer.

Police officers received an anonymous tip regarding drug activity at Long's residence. During surveillance of Long's property, officers saw the trash bags on the trailer on a Thursday and noted that the bags were gone the next day. They surmised that Long placed his garbage on the trailer for pick-up by sanitation crews. The following week, officers driving through the alley stopped next to the trailer, left their vehicle, stepped onto Long's property, and removed three dark-colored garbage bags from atop the trailer. A search warrant was obtained based on evidence found in the trash bags. Upon executing the search warrant, officers found methamphetamine and other evidence in Long's residence.

Long moved to suppress the evidence, arguing that officers obtained the trash bags from the curtilage of his home in violation of the Fourth Amendment. The district court held that the trailer was parked outside the curtilage of the home, but regardless of where it was parked, inside or outside the curtilage, Long lacked a reasonable expectation of privacy in the trash bags.

After examining the curtilage argument, as well as the expectation of privacy, the Tenth Circuit affirmed. 176 F.3d at 1308. First, the court held that the trailer was located outside the curtilage of the home. It was closer to the alley than the garage, being positioned as close to the alley as it could have been without being in the alley. Long did not demonstrate that this area of his backyard

was used for an intimate activity associated with the sanctity of the home; rather, it was used for depositing garbage.

As for the expectation of privacy, the court indicated that whether officers violated the Fourth Amendment does not depend solely on curtilage. In garbage cases, Fourth Amendment reasonableness turns on public accessibility to the trash. See *Greenwood*, 486 U.S. 35. Society does not recognize a reasonable expectation of privacy in trash left for collection in an area accessible to the public. Long's placement of the trash bags so close to the alley made the garbage readily accessible and visible from a public thoroughfare. The location Long selected for trash pick-up, by arrangement with the trash collector, was not secluded or difficult to reach and was near the alley with no fence or other barrier separating the trash from the alley. Long had purposefully placed the trash bags on the trailer, near the alley, for collection. The court held that once Long put his trash on the trailer adjacent to a public thoroughfare for collection, he lost any reasonable expectation of privacy in the garbage (citing *Greenwood*, 486 U.S. at 40). The *Long* court held that the officers did not violate the Fourth Amendment when they removed the trash bags from the trailer.

Our Supreme Court relied on *Long* in *Kimberlin*, 267 Kan. at 664-65. *Kimberlin* involved a tip received by police that marijuana was being used at Kimberlin's address. Without a search warrant, officers picked up opaque plastic bags of trash located 5 to 8 feet from the street on the other side of a small ditch which was approximately 35 to 40 feet in front of the house. The trash was sitting in the location customarily used for trash pick-up by city sanitation crews. Items retrieved from the trash bags established they belonged to Kimberlin and contained contraband and paraphernalia supporting the issuance of a search warrant. Execution of the search warrant yielded drugs and paraphernalia from Kimberlin's residence. Before trial, Kimberlin moved to suppress the evidence seized in the search of his residence but his motion was denied by the trial court. He was convicted of possession of marijuana and possession of drug paraphernalia.

On appeal, our Supreme Court held that the searches of Kimberlin's trash which led to the issuance of the search warrant were

not in violation of the Fourth Amendment or § 15 of the Kansas Constitution Bill of Rights. The *Kimberlin* court noted the following rationale for its holding:

"Here, defendant placed his trash by the street for collection. The trash was 5 to 8 feet from the street and 35 to 40 feet from the house. A drainage ditch separated the trash from the street. There was no fence or barrier separating the trash from the street, other than the drainage ditch. Trash was placed in this location regularly for collection by sanitation crews. As in *[U.S. v.] Long*, [176 F.3d 1309 (10th Cir.), *cert. denied* 528 U.S. 921 (1999)] there was no indication that this was a secluded place or a place used for intimate activities associated with the sanctity of the home, thus, it does not have the basic attributes of curtilage. Whether the trash was inside or outside the curtilage is not determinative in garbage cases. Once defendant placed his trash out for collection adjacent to a public thoroughfare, he defeated any reasonable expectation of privacy in the garbage." 267 Kan. at 665-66.

These cases, however, are distinguishable from the instant case in that Fortune's trash container was located adjacent to his residence when the officers searched his garbage. Other jurisdictions have upheld the warrantless search of garbage even though the trash was deposited in close proximity to defendant's residence. See, *e.g.*, *U.S. v. Redmon*, 138 F.3d 1109 (7th Cir. 1998), *cert. denied* 525 U.S. 1066 (1999) (holding that defendant did not have a reasonable expectation of privacy in his garbage placed in front of the joint garage on the shared driveway-sidewalk to his townhouse); *U.S. v. Hedrick*, 922 F.2d 396 (7th Cir.), *cert. denied* 502 U.S. 847 (1991) (holding that defendant had no reasonable expectation of privacy in his garbage where the distance between the garbage cans on defendant's driveway and the sidewalk was 18 feet, the garbage was collected by the garbage service at that location, and the garbage cans were clearly visible from the sidewalk); *U.S. v. Shelby*, 573 F.2d 971 (7th Cir.), *cert. denied* 439 U.S. 841 (1978) (holding that search of defendant's garbage, located inside a low fence, by a trash collector at the FBI's request did not violate the defendant's reasonable expectation of privacy); *People v. McNeal*, 175 Ill. 2d 335, 677 N.E.2d 841, *cert. denied* 522 U.S. 917 (1997) (holding exigent circumstances justified warrantless search of garbage cans leaning against the back of defendant's townhouse, near the back door); *State v. Trahan*, 229 Neb. 683, 428 N.W.2d 619,

*cert. denied* 488 U.S. 995 (1988) (holding that defendant lacked constitutionally protected expectation of privacy in trash located approximately 4 feet from the back door of his trailer); *Levario v. State*, 964 S.W.2d 290 (Tex. App. 1997) (holding that defendant lacked reasonable expectation of privacy in garbage located within a few feet of his home); *cf. U.S. v. Certain Real Property Loc. at 987 Fisher Road*, 719 F. Supp. 1396, 1407 (E.D. Mich. 1989) (holding that defendant had reasonable expectation of privacy in his garbage bags that were placed against the back wall of his house and hidden from the view of individuals passing in front of his house). See generally Annot., *Searches and Seizures: Reasonable Expectation of Privacy in Contents of Garbage or Trash Receptacle*, 62 A.L.R.5th 1, 20-21.

We conclude that Fortune had no reasonable expectation of privacy in discarded trash even if it were within the curtilage of his home. The officers retrieved the garbage from the location Fortune normally placed it for collection. Although the garbage was discarded near Fortune's residence, it was easily accessible to the public in that the distance between the trash container and the road was short, only 8 feet. Moreover, the garbage was clearly visible from a public thoroughfare. The proximity of the garbage container to the road and the absence of a fence or any other barrier indicates that the garbage was knowingly exposed to the public.

Although Fortune may have attempted to shield his garbage from public view by placing it in a lidded container, the trash was overflowing the container and was visible and accessible to the public. See *State v. Alexander*, 26 Kan. App. 2d 192, 200, 981 P.2d 761, *rev. denied* 268 Kan. 888 (1999) (noting that claimed expectation of privacy was not significantly more reasonable because defendant's garbage was contained in a closed container with the lid strapped shut because the garbage was still accessible to the public).

In addition, it is of little significance that officers trespassed onto Fortune's property to retrieve the garbage. *Alexander* noted property rights are only one element in determining the legitimacy of the expectation of privacy and upheld a warrantless search of defendant's garbage despite a slight trespass onto his property. See

also *Kimberlin*, 267 Kan. at 665 (upholding warrantless search of defendant's garbage even though officers entered 5 to 8 feet on his property to retrieve the trash).

Fortune further attempts to distinguish his case from *Greenwood* by noting that police rather than garbage collectors removed his trash. However, both *Kimberlin* and *Alexander* upheld searches when the defendants' trash was removed from the premises by police. *Kimberlin*, 267 Kan. at 665 ("The officers did not violate the Fourth Amendment when they removed the trash bags from the trailer."); *Alexander*, 26 Kan. App. 2d at 201.

Fortune's final argument on this issue is that the search of his trash was unlawful because he had a heightened expectation of privacy in his garbage since he contracted with a private rather than a municipal garbage collection company. This argument, however, was rejected in *Alexander*. That case involved the warrantless search of garbage deposited in a trash receptacle supplied by a private garbage collection company. Police obtained a warrant to search Alexander's house based on the evidence discovered from the trash and discovered cocaine, cash, and drug paraphernalia inside Alexander's residence. The trial court granted Alexander's motion to suppress, noting that Alexander's garbage was placed in a private container and the police had to enter Alexander's property to remove it. On appeal, this court rejected Alexander's contention that the search of his garbage was unlawful because he contracted with a private collector. The court reasoned that the garbage was conveyed to a third party and presumably both private and public garbage collectors are capable of sorting through the garbage and allowing others to do the same. See *U.S. v. Hall*, 47 F.3d 1091, 1097 (11th Cir.), *cert. denied* 516 U.S. 816 (1995) ("We fail to see how contracting with a private garbage collection service diminishes the probative value of the fact that the garbage was conveyed to a third party.").

We find that Fortune had no reasonable expectation of privacy in his garbage once he placed it in a location accessible to the public. The police did not infringe upon any societal values protected by the Fourth Amendment when they searched Fortune's trash even though the garbage was located adjacent to his home,

was deposited in a private garbage company's lidded container, and was retrieved from the container by police rather than garbage haulers. As a result, the search of Fortune's garbage was lawful and fruits of the search were sufficient to establish probable cause for a warrant to search Fortune's residence.

Next, Fortune contends that the court erred in admitting hearsay testimony concerning statements made by the confidential informants. Fortune argues that the State was allowed to introduce hearsay evidence over his objection during its direct examination of Officer Goebel. Fortune contends that information related to Goebel by the confidential informants constituted hearsay evidence since the statements were offered to prove the truth of the matter stated.

In reviewing the trial court's admission of evidence, the appellate court must decide: (1) whether evidence was admissible or inadmissible, and (2) if evidence was inadmissible, whether to apply the harmless error rule of review or the federal constitutional error rule. *State v. Smallwood*, 264 Kan. 69, 80-81, 955 P.2d 1209 (1998).

Under K.S.A. 60-460 hearsay is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." However, the hearsay rule does not preclude "[s]tatements of dispatchers or informants, offered only to explain the course of action of an investigating officer." *State v. Laubach*, 220 Kan. 679, 683, 556 P.2d 405 (1976).

Similarly, *U.S. v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987), held that out-of-court statements are not hearsay when offered for the limited purpose of explaining why a government investigation was undertaken and why the government took the preparation and steps it did in preparing for an arrest. See *United States v. Mancillas*, 580 F.2d 1301, 1309 (7th Cir.), *cert. denied* 439 U.S. 958 (1978) ("Whether or not the . . . statement was true, the fact that it was made would surely explain the flurry of investigative activity in three states the jury was soon to hear about. [Citations omitted.] For this purpose, outlining the background of the investigation with the evidence not being offered to prove its truth, it could be said not to be nonadmissible as hearsay.").

Fortune, however, contends that the substance of the informants' communications with Officer Goebel is inadmissible hearsay because the information tended to identify him as the accused and establish his guilt. Fortune argues that the confidential informants provided information which tended to establish that he was the person who, among five possible suspects within his residence, most likely possessed the drugs and the information helped establish that the marijuana was for sale. To support his argument, Fortune cites *State v. Thompson*, 221 Kan. 176, 179, 558 P.2d 93 (1976), and *State v. Rowe*, 252 Kan. 243, 843 P.2d 714 (1992). In *Thompson*, testimony concerning an anonymous phone call to a police officer advising that a crime under investigation was committed by a man identified as "Crazy John" was held to be inadmissible. The *Rowe* court held that testimony regarding a confidential informant's oral and written statements were not offered merely to explain the steps involved in an investigation, but rather were the only evidence linking the defendants to the alleged drug sales.

*Thompson* and *Rowe*, however, are distinguishable from the instant case because the confidential informants were not the only means the State had to establish Fortune's identity and guilt. Officers verified that Fortune resided at the address provided by the informants by checking police and utilities records. In addition, the informants' statements were further corroborated by the trash search, which yielded evidence of drug traffic at Fortune's residence.

Moreover, Fortune's guilt was established through the voluminous amount of drugs seized from his residence. Fortune, however, argues that there was no evidence which tended to indicate that he, as opposed to the other four viable suspects in his residence, was in possession of the drugs. When a defendant is in nonexclusive possession of the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs. *State v. Cruz*, 15 Kan. App. 2d 476, Syl. ¶ 11, 809 P.2d 1233, *rev denied* 249 Kan. 777 (1991).

Here, other incriminating circumstances connected Fortune to the drugs. First, many of the bricks of marijuana recovered from Fortune's residence were found in plain view. See *State v. Bullocks*, 2 Kan. App. 2d 48, 49-50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978) (holding that the evidence tended to show knowledge and intent because drugs and paraphernalia were found in defendant's house in plain view). Moreover, some of the drugs and paraphernalia, including the mushrooms, were found in a dresser containing men's clothing, which suggests that the drugs belonged to Fortune. See *State v. Walker*, 217 Kan. 186, 189-90, 535 P.2d 924 (1975) (holding that the defendant constructively possessed heroin which was found in the bedroom of a house that only he occupied). Furthermore, when officers entered Fortune's residence upon execution of the search warrant, the officers observed Fortune near the door to the bathroom, suggesting that he flushed away the amphetamines that were discovered in the sewer pipes underneath the trailer. This evidence sufficiently links Fortune to the drugs even in the absence of the confidential informants' statements.

We find that Goebel's testimony relative to the confidential informants' statements was offered not for its truth but only to explain why the officers began investigating Fortune. As such, it was not inadmissible hearsay and was not the only evidence tending to establish Fortune's identity and guilt. As a result, the trial court did not err in admitting the confidential informants' statements into evidence.

Affirmed.