NOT DESIGNATED FOR PUBLICATION

No. 120,702

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN CHRISTOPHER MITCHELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed May 1, 2020.
Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Brock R. Abbey*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM:  This is an appeal by Ryan Christopher Mitchell upon his conviction for possession of methamphetamine with intent to distribute, two counts of possession of drug paraphernalia, and possession of a firearm by a convicted felon. Mitchell contends there was insufficient evidence to support the convictions.

Upon our review of the record on appeal, the trial transcript, and the parties' appellate briefs, we find no error and, therefore, affirm the convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 2018, Salina police officers were dispatched to the Ambassy Motel to assist in arresting Mitchell for a parole violation. When the officers encountered Mitchell in the motel parking lot, they observed him attempting to open the driver's side door of a Chevrolet Equinox with a coat hanger. Mitchell informed the officers that the vehicle was his but that he had locked the keys inside. Later, he denied any ownership interest in the vehicle.

The officers placed Mitchell under arrest for the parole violation and personally searched him incident to the arrest. The officers seized a small zippered bag containing a smaller, plastic bag with 93.4 grams of methamphetamine inside Mitchell's coat. Additionally, the officers seized from Mitchell's front jeans pocket $2,328 in cash rolled up and secured with a tie.

Upon Mitchell's arrest, he asked the officers to contact his girlfriend, Arasely Duron, who was in motel room 33. The officers located Duron in the motel room, arrested her for a parole violation, and brought her to the parking lot. When Mitchell realized the officers were arresting Duron, he told the officers that everything in the motel room belonged to him.

The officers executed a search warrant for the motel room and found a so-called "stash can" containing various amounts of methamphetamine weighing a total of 9.2 grams and packaged in three separate plastic baggies; two glass smoking pipes with residue; two digital scales with residue; a notepad/owe sheet found inside a brown purse with the identification card of Arasely Duron; a loaded Taurus 9mm handgun; a box containing numerous baggies and marijuana residue; and a bag containing several plastic baggies.

The officers executed a second search warrant for the Equinox and seized a blue backpack located in the rear cargo area. The backpack contained a speaker box which had numerous plastic bags and a functioning digital scale with residue; 9mm ammunition; a silver spoon with residue; and a First Alert safe. The safe contained 9mm ammunition; cut straws with residue; plastic spoons; several plastic bags with residue; a functional digital scale with residue; and several plastic bags with residue. Additionally, a marijuana joint was found in the center console of the car.

The methamphetamine found on Mitchell and inside the backpack in the Equinox weighed about 100.88 grams.

The State charged Mitchell with possession with intent to distribute methamphetamine of 100 grams or more in violation of K.S.A. 2017 Supp. 21-5705(a)(1) and (d)(3)(D) and K.S.A. 2017 Supp. 21-6805(g)(1)(A); possession of drug paraphernalia in violation of K.S.A. 2017 Supp. 21-5709(b)(1) and (e)(2)(A) (felony); possession of drug paraphernalia in violation of K.S.A. 2017 Supp. 21-5709(b)(2), a class B nonperson misdemeanor; possession of marijuana in violation of K.S.A. 2017 Supp. 21-5706(b)(3) and (c)(3)(B); no drug tax stamp in violation of K.S.A. 79-5204; and criminal possession of a firearm/weapon by a convicted felon in violation of K.S.A. 2017 Supp. 21-6304(a)(3)(A).

A jury convicted Mitchell of possession of methamphetamine with the intent to distribute at least 100 grams with a firearm sentencing enhancement, possession with the intent to use drug paraphernalia (plastic baggies, black zippered bag, black drawstring bag, scales, and notepad/owe sheet), possession with the intent to use drug paraphernalia (pipes and straws), and criminal possession of a firearm by a convicted felon. Mitchell was sentenced to a controlling term of 176 months in prison with 36 months postrelease supervision.

Mitchell filed a timely notice of appeal.

## SUFFICIENCY OF THE EVIDENCE

On appeal, Mitchell does not challenge the State's proof of numerous elements of the individual crimes for which he was convicted. Rather, the sole issue Mitchell raises on appeal is whether the State proved beyond a reasonable doubt that *he* had possession of the methamphetamine, drug paraphernalia, and firearm that were found in the motel room and the Equinox. Consistent with his approach on appeal, however, Mitchell candidly concedes that because he personally possessed 93.4 grams of methamphetamine he may properly be convicted and sentenced for the lesser offense of a severity level 2 drug felony—possession of methamphetamine with the intent to distribute but without any enhancement of sentence due to possession of a firearm.

Our standard of review provides:

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

As just noted, Mitchell only challenges whether there was sufficient evidence to prove that *he* possessed the drugs, drug paraphernalia, and firearm that were seized from the motel room and Equinox. As a result, our analysis will focus on the constructive possession element of the crimes.

In keeping with the relevant PIK instruction, the district court informed the jury: "'Possession' means having joint or exclusive control over an item with knowledge of and

4

the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." PIK Crim. 4th 57.020 (2018 Supp.). Mitchell does not challenge the propriety of this instruction. Instead, Mitchell argues that he did not have exclusive control over the motel room or Equinox and the State failed to prove that he had some measure of access and right of control over the items found in those areas.

While the methamphetamine found in Mitchell's coat pocket was under his exclusive control, the drugs, drug paraphernalia, and firearm found in the motel room or Equinox were not shown to be solely in his possession. Rather, at trial the State's theory was that Mitchell constructively possessed the incriminating evidence.

Generally, "when a defendant is in nonexclusive possession of the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs." *State v. Marion*, 29 Kan. App. 2d 287, 290, 27 P.3d 924 (2001). In this regard, courts consider various factors, such as: "(1) the defendant's previous sale or use of narcotics; (2) the defendant's proximity to the area in which the drugs were found; (3) the fact that the drugs were found in plain view; and (4) the defendant's incriminating statements or suspicious behavior." *State v. Keel*, 302 Kan. 560, 567-68, 357 P.3d 251 (2015) (citing *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233 [1991]). Of note, "[t]he list of incriminating factors in *Keel* is not exclusive. The *Keel* court stated that incriminating factors 'include' the four factors cited, not that the incriminating factors are limited to the four in the list." *State v. Washington*, No. 115,225, 2017 WL 2304451, at *3 (Kan. App. 2017) (unpublished opinion). Lastly, "[i]n order to establish a defendant's constructive possession of drugs, more than 'mere presence or access to the drugs' is required to sustain a conviction." *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009).

We will apply the four factors cited in *Keel* in analyzing whether there was sufficient evidence to prove that Mitchell constructively possessed the drugs, drug paraphernalia, and firearm in the motel room and Equinox.

*Items Found in the Motel Room*

Mitchell complains there was insufficient evidence to connect him to the illegal drugs, drug paraphernalia, and firearm seized from the motel room. In particular, he notes the motel room was registered to his girlfriend, Duron, Mitchell did not have a key to the room, and he was not observed inside the room. He contests that any of the illegal items were in plain view and he notes there was no proof that he was involved in the previous sale or use of narcotics. Mitchell also asserts there was no evidence that he had been inside the motel room for a long time.

Upon our independent review of the evidence, in a light most favorable to the prosecution, we are convinced a rational fact-finder could have found that Mitchell constructively possessed the methamphetamine, drug paraphernalia, and firearm seized from the motel room. Several factors bolster our conclusion.

First, at the scene, Mitchell spontaneously and voluntarily admitted that everything inside the motel room belonged to him. At trial, the State played footage from an officer's body cam which memorialized Mitchell's incriminating statement. Although Mitchell later recanted his admission against interest, the jury heard evidence of both statements made by Mitchell and was able to consider whether the admission or the recantation was the truth.

Mitchell counters that his admission is insufficient because his girlfriend, Duron, testified at trial that the illegal items belonged to her and that she asked Mitchell to claim ownership because "I was already in trouble and I didn't want more [prison] time. I was

6

being selfish." None of the officers, however, recalled hearing Duron make this statement. Moreover, Duron's credibility was challenged as she admitted that she was previously convicted of crimes of dishonesty—robbery and passing a worthless check. Regardless, "jurors may choose to believe parts of a given witness' account of relevant events and disbelieve other parts." *State v. Franco*, 49 Kan. App. 2d 924, 930, 319 P.3d 551 (2014).

Under our standard of review, we consider all the evidence relating to Mitchell's statements at the scene and Duron's testimony at trial in a light most favorable to the State. In accordance with *Keel*, Mitchell's incriminating statement that he possessed the drugs, drug paraphernalia, and firearm in the motel room tends to prove constructive possession. See 302 Kan at 567-68.

Second, there was evidence that Mitchell had stayed in the motel room. Mitchell told the officers that he was in a dating relationship with Duron. Duron admitted at trial that Mitchell had been inside the motel room shortly before his arrest. Moreover, officers found men's shoes and toiletries inside the room. The room contained Mitchell's personal items in proximity to the drug paraphernalia. For example, Mitchell had a tote bag of his belongings inside the motel room and a functioning digital scale (like the one on the nightstand) was found inside the tote bag.

Although Duron later changed her testimony, she initially testified that Mitchell's tote bag was the only item in the motel room that belonged to him. See *State v. Bockert*, 257 Kan. 488, 494, 893 P.2d 832 (1995) (noting that factors supporting constructive possession include "proximity of the defendant's possessions to the drugs"); *State v. Fortune*, 28 Kan. App. 2d 559, 571, 20 P.3d 74 (2001) ("some of the drugs and paraphernalia, including the mushrooms, were found in a dresser containing men's clothing, which suggests that the drugs belonged to Fortune").

The loaded firearm was found on the bed covered up by bedding or clothing. That firearm was loaded with ammunition of the same brand and caliber as the ammunition discovered in the backpack found in the Equinox. Consonant with *Keel*'s guidance, the defendant's proximity to the area in which the drugs were found was shown through testimony and his personal effects. See 302 Kan at 567-68. This factor favors a finding of constructive possession.

Third, officers observed drug paraphernalia in plain view inside the motel room. For example, a digital scale with residue was observed on a nightstand, and numerous small plastic jewelry baggies that are commonly used in distributing small quantities of drugs were found in plain sight throughout the room. Expert testimony established that officers commonly find scales and baggies used together for the purpose of distributing drugs. In keeping with *Keel*, the fact that drug paraphernalia was found in plain view supports an inference of constructive possession. See 302 Kan at 567-68.

Fourth, as conceded by Mitchell on appeal, at the time he was in the immediate vicinity of the motel room, he personally possessed a significant quantity of methamphetamine and a large sum of money. The personal possession of drugs is akin to a defendant's use of narcotics, which is one of the *Keel* factors of proving constructive possession. See 302 Kan at 567-68. Of course, the same kind of illegal drug that Mitchell personally possessed—methamphetamine—was also packaged in three individual baggies that were seized from the motel room in a stash container. Moreover, a large amount of cash possessed by an individual who also personally possesses illegal drugs may raise an inference of drug dealing. *State v. Fitzgerald*, 286 Kan 1124, 1131, 192 P.3d 171 (2008).

In summary there was substantial competent evidence to show that Mitchell constructively possessed the drugs, drug paraphernalia, and firearm seized from the motel room. This evidence included Mitchell's incriminating admission to possessing the illegal

items, proof that Mitchell spent time in the motel room with ready access to some of the contraband in plain view, and his personal possession of methamphetamine and $2,328 in cash a short distance from the motel room. Viewing the evidence in a light most favorable to the prosecution, a rational fact-finder could find that the State proved beyond a reasonable doubt that Mitchell constructively possessed the illegal items seized from the motel room.

The result of this finding is that in addition to the other crimes of conviction, the State proved that Mitchell had possession of over 100 grams of methamphetamine. The methamphetamine found in Mitchell's jacket weighed 93.4 grams. Three small baggies found inside a stash can in the motel room contained the following amounts of methamphetamine:  (1) 5.52 grams, (2) 1.57 grams, and (3) .49 grams. Together, the packages of methamphetamine found on Mitchell and in the motel room weighed 100.88 grams.

*Items Found in the Equinox*

Mitchell contends the State failed to prove constructive possession over the contraband found in the Equinox. In particular, he points out the vehicle was not registered to him, and there was no evidence that he drove it. At trial, Duron testified that she had borrowed the vehicle from a friend and that Duron drove it, not Mitchell. She was unaware of the backpack found in the car or its contents. Lastly, Mitchell notes the contraband inside the backpack was not in plain view.

Our review of the trial evidence, in a light most favorable to the prosecution, convinces us that a rational fact-finder could have found that Mitchell constructively possessed the drug paraphernalia found in the backpack located in the rear cargo area of the Equinox. Once again, we analyze this issue mindful of the *Keel* factors.

First, Mitchell claimed possession of the vehicle. When officers encountered him in the parking lot, he was attempting to unlock the Equinox with a coat hanger. Mitchell advised the officers that the vehicle belonged to him and he had locked the keys inside of it. Mitchell later retracted his statement and said that it was not his vehicle, but he repeated that he was trying to unlock the Equinox because the keys were inside. On appeal, Mitchell argues that his initial statement to the police can be explained because he was on parole and worried about being caught in a precarious situation.

There was substantial competent evidence to show that Mitchell did not, in fact, own the Equinox. Still, there was also sufficient evidence that he had been in joint possession of the vehicle earlier in the day. Duron testified that when she borrowed the Equinox from her friend, she drove it to a court hearing in Clay Center and then drove back to the motel—Mitchell was a passenger and with her throughout the day. Mitchell's claim of ownership, his efforts to open the locked vehicle to obtain the keys, and Duron's testimony clearly establish Mitchell's association with the Equinox. This evidence of Mitchell's admitted statement of ownership, which he later contradicted, and his suspicious behavior in trying to enter the Equinox constitutes one of the relevant factors noted in *Keel*. See 302 Kan at 567-68.

Second, the drug paraphernalia found in the Equinox was like the drug paraphernalia found in the motel room. Two digital scales with residue found in the backpack were similar in appearance to the two digital scales with residue found in the motel room. Pipes or straws to ingest illegal drugs were found in both the Equinox and the motel room. Small plastic jewelry baggies found inside the backpack were similar to those found inside the motel room. In addition to the drug paraphernalia, the backpack in the vehicle contained 9mm ammunition of the same brand and caliber as the ammunition found loaded in the 9mm firearm seized from the motel room. In summary, there was an obvious correlation between the drug paraphernalia and ammunition in the backpack and the drugs, drug paraphernalia, and firearm found in the Equinox. In this way, the State

proved that Mitchell had constructive possession over the vehicle and the backpack found inside.

Third, at the time the officers observed Mitchell attempting to enter the Equinox, he was in possession of a large quantity of methamphetamine and a large sum of cash. As discussed earlier, given these facts, it is reasonable to infer that the drug paraphernalia and ammunition found in the car Mitchell was attempting to enter were constructively possessed or owned by him.

In summary, there was substantial competent evidence to show that Mitchell constructively possessed the drug paraphernalia and ammunition seized from the backpack found in the Equinox. Viewing the evidence in a light most favorable to the prosecution, a rational fact-finder could find that the State proved beyond a reasonable doubt that Mitchell constructively possessed the drug paraphernalia found in the backpack.

We hold there was substantial competent evidence to support the convictions which Mitchell challenges on appeal. Viewing the evidence in a light most favorable to the State, a rational fact-finder could find that the State proved beyond a reasonable doubt that Mitchell committed the crimes for which he was convicted.

Affirmed.